Connie M. TOLLE, Plaintiff–Appellant,

v.

**CARROLL TOUCH, INCORPORATED, a wholly owned subsidiary of AMP Incorporated, formerly known as Carroll Touch Technology Corporation, Defendant–Appellee.**

No. 91–2405.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1992.

Decided Oct. 20, 1992.

---

Evan A. Strawn, Bloomington, Ill., argued, for plaintiff-appellant.

Ray E. Alexander, Springfield, Ill., Vincent Candiello (argued), Harrisburg, Pa., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

This case raises an interesting and important question of first impression for this court: when does a claim that an employer terminated an employee in order to avoid providing employee benefits accrue under Section 510 of the Employee Retirement Income Security Act ("ERISA")? This case also raises interesting questions regarding ERISA's preemption of state claims.

## I.

In November of 1978, Connie M. Tolle went to work for Carroll Touch, Incorporated ("CTI") as one of CTI's first five or so employees. CTI manufactures electrical connection, switching, and programming devices. During her tenure, Tolle provided engineering support services in the form of mechanical drafting, ordering of supplies, and the creation of necessary documentation adjunct to the manufacturing process.

When Tolle began her employment with CTI, its operating facility was located in

Champaign, Illinois. However, sometime in 1981 or 1982, Tolle became aware that Art Carroll, CTI's then-President, desired to relocate to Texas. On January 9, 1984, all of CTI's employees were notified of specific measures being undertaken to facilitate the relocation of CTI to Round Rock, Texas.

At the time she was hired by CTI, Tolle advised Carroll that she had heart murmurs but that this condition did not cause her problems. In 1980 Tolle went to see Dr. Suchor for a routine physical examination. Dr. Suchor did a cardiogram and diagnosed stenosis. In February of 1984, Tolle began treatment with Dr. Daniel K. Bloomfield for her heart condition and continued under his care through October 1, 1984. Dr. Bloomfield diagnosed Tolle as suffering from rheumatic mitral stenosis. Dr. Bloomfield described this condition as "a disease which affects the mitral valve ... [which is] the main valve between the left atrium and the left ventricle." According to Dr. Bloomfield, mitral stenosis is a slowly progressive problem which causes a thickening of the mitral valve. Dr. Bloomfield after this first exam concluded that "[t]here clearly was no emergency." Dr. Bloomfield referred Tolle to another doctor for a second opinion. Dr. Van Osdol confirmed that Tolle had mitral stenosis and that surgery would not be necessary for a period of years. Dr. Bloomfield later referred Tolle to a surgeon for yet another opinion. On September 7, 1984, Dr. Alfred Heckman, Jr. performed a cardiac catheterization on Tolle. After performing this catheterization, Dr. Heckman concluded surgery on the mitral valve would not be necessary for four to five years.

According to Tolle's brief on appeal, on September 19, 1984, Nick Tableriou, CTI's Plant Manager, informed Tolle that her employment would be terminated on October 19, 1984. On September 24, 1984, Tableriou sent Tolle a memorandum with regard to this conversation. This memorandum states, "Effective the 19th of October, your services will no longer be required at Carroll Touch in Champaign because of a relocation of the job function and responsibility to Austin, Texas. You will be enti-

tled to insurance coverage effective through November 30, 1984."

On October 1, 1984, Tolle made her first oral request for a medical leave of absence from CTI due to her heart disease. On October 10, 1984, Tolle submitted a "Claim for Loss of Time Benefits Form" to Judy Day, CTI's personnel manager. Day informed Tolle that this form needed to be submitted to Dr. Bloomfield, and, if Dr. Bloomfield certified her as "disabled," CTI would put her on "medical leave." Day then enlisted Jeryl Ploeger of Ploeger & Associates, Inc. to process Tolle's claim. Apparently, Ploeger sent the "Claim for Loss of Time Benefits Form" to Dr. Bloomfield for completion on October 11, 1984. Dr. Bloomfield completed part of the form but left blank the portion regarding Tolle's disability. Apparently Ploeger called Dr. Bloomfield regarding his failure to fill out the information regarding Tolle's disability, and Dr. Bloomfield told Ploeger that he did not consider Tolle disabled. As such, on November 8, 1984, Ploeger wrote Tolle stating that her disability claim could not be processed because Dr. Bloomfield did not consider her disabled. Dr. Bloomfield's failure to certify Tolle as disabled not only meant that she could not receive benefits as a result of the disability, but it also meant that CTI terminated her on October 19, 1984, rather than placing her on medical leave. Tolle did not contact Dr. Bloomfield to see why he did not classify her as disabled, nor did she talk to anyone at CTI before January of 1988 with regard to her request for disability benefits.

On September 29, 1989, Tolle filed a complaint against CTI. On October 31, 1989, Tolle filed an amended complaint. On April 5, 1991, about one month after the discovery cut-off date, CTI filed a motion for summary judgment. In reviewing this motion for summary judgment the district court focused on the following allegations contained in Tolle's complaint: (1) CTI's employment termination of Tolle on October 19, 1984, interfered with and deprived her of certain employee benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140; (2) CTI breached the employment

agreement existing between it and Tolle as reflected in the employee welfare benefit plans by terminating her employment without regard to or in compliance with such plans; and (3) CTI breached an implied covenant of good faith and fair dealing by terminating her employment "to avoid the payment to her of benefits to which she was or would become entitled to receive" under the benefit plan. And, on May 20, 1991, the district court granted this motion on the basis that ERISA preempted her state claims and the statute of limitations barred Tolle's claim under Section 510 of ERISA, 29 U.S.C. § 1140. Tolle appeals this dismissal. We affirm the district court's dismissal of Tolle's state claims and her ERISA Section 510 claim. However, as we explain, Tolle's complaint not only raises a claim under Section 510 of ERISA, but the complaint also raises claims under Sections 502(a)(1)(B) and 503 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), 1133. We remand for further proceedings with regard to these remaining ERISA claims.

## II.

### A. *Nature of Tolle's ERISA Claims*

Because this appeal comes to us on grant of a motion for summary judgment, we proceed *de novo. Schroeder v. Copley Newspaper*, 879 F.2d 266, 268 (7th Cir. 1989). We will look to the language of a few relevant ERISA provisions before proceeding with a discussion of the nature of Tolle's claims for relief.

Section 502(a)(1)(B) of ERISA provides:

> (a) **Persons empowered to bring a civil action**
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary ...

---

1. Section 502(a)(3) provides:
 (a) **Persons empowered to bring a civil action**
 A civil action may be brought ...
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan....

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

When someone raises a Section 502(a)(1)(B) claim, he or she is essentially asserting his or her contractual rights under an employee benefit plan. *Jenkins v. Local 705 Int'l Brotherhood of Teamsters Pension Plan*, 713 F.2d 247, 252–53 (7th Cir.1983). And, the wrong that the person alleges in bringing such an action is that despite the fact that he or she has satisfied the conditions necessary for benefits under the plan, the defendant has failed to abide by the terms of the plan. Not surprisingly, this court has concluded that Section 502(a)(1)(B) claims are creatures of contract law. *Id.*

The relevant portions of Section 510 provide:

> It shall be unlawful for any person to *discharge*, fine, suspend, expel, discipline, or discriminate against *a participant or beneficiary* for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act ..., or *for the purpose of interfering with the attainment of any right to which such a participant may become entitled under the plan*, this subchapter, or the Welfare and Pension Plans Disclosure Act.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140 (emphasis added).

A Section 510 claim is made enforceable through Section 502(a)(3) and (e) of ERISA, 29 U.S.C. § 502(a)(3), (e).[1] Section

---

29 U.S.C. § 1132(a)(3).
Section 502(e) provides:
(e) **Jurisdiction**
(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent juris-

510, unlike Section 502(a)(1)(B), is not concerned with whether a defendant complied with the contractual terms of an employee benefit plan. Rather, the emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan. *See, e.g.,* 29 U.S.C. § 1140; *Felton v. Unisource Corp.,* 940 F.2d 503, 512 (9th Cir.1991). The difference between enforcing the terms of a plan and assuring that parties do not somehow impinge on current or future rights under employee benefit plans may seem subtle at first glance, but upon a close examination it becomes clear that the distinction is great. In order to enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan. *See* 29 U.S.C. § 1132. Rather than concerning itself with these qualifications, one of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first instance. *See* 29 U.S.C. § 1140; *see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, ——, 111 S.Ct. 478, 485, 112 L.Ed.2d 474 (1990).

■ We now move to Section 503 of ERISA which provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. If a participant does not receive the notice and review that he or she

diction of actions under subsection (a)(1)(B) of this section.

is entitled under Section 503, the participant may bring a civil enforcement action under Section 502(a)(3) and (e) of ERISA.

In Count 1 of her amended complaint Tolle alleges that CTI terminated her "in order to deprive her of continued participation in the company-funded employee benefit programs...." And, she alleges that this termination interfered with and deprived her of benefits in violation of Section 510 of ERISA, 29 U.S.C. § 1140. It is, therefore, clear that Tolle's complaint states a claim under Section 510 of ERISA, 29 U.S.C. § 1140. The district court, however, acted under the assumption that this Section 510 claim was the only ERISA claim that Tolle raised in this complaint. We do not agree with this assessment.

In *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992), this court emphasized that a complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8 of the Federal Rules of Civil Procedure. And, we held that a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as "relief is possible under any set of facts that could be established consistent with the allegations." *Id. See also Shannon v. Shannon,* 965 F.2d 542 (7th Cir.1992).

■ Applying the principles set forth in *Bartholet,* we now address whether Tolle has stated a claim for relief under Section 503. Count 1 of Tolle's complaint does not name Section 503 as a basis for her claim. Nonetheless, this Count specifically alleges the following:

On or about October 19, 1984, the plaintiff's request for medical leave and loss of time benefits was denied by the company, without a hearing, without a written explanation of the reason for the denial, without an opportunity to adduce evidence of the disabling effects of her heart disease, and without notice of her rights under ERISA....

29 U.S.C. § 1132(e)(1).

As we mentioned above, Section 503 requires adequate notice and opportunity for review when a participant's claim for benefits is denied. 29 U.S.C. § 1133. And, Section 502(a)(3) allows a party to bring a civil action for relief when such requirements are not followed. These above allegations, although never mentioning Sections 503 and 502(a)(3), sufficiently raise a claim for relief under these Sections. *See Bartholet*, 953 F.2d at 1078.

Now we move to the question of whether Tolle has sufficiently raised a claim for relief under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). *Bartholet* and *Shannon*, like this case, involved ERISA actions. In those cases we held that although the parties framed their claims as claims under state law, the parties plead facts sufficient to raise claims under ERISA. Indeed, we concluded in those cases that ERISA preempted the state claims. We now address whether Count 2 of Tolle's complaint sufficiently raises a claim under Section 502(a)(1)(B), and we will later discuss how this decides the preemption analysis for such a claim.

■ In Count 2 of her amended complaint, Tolle alleges that CTI "breached that part of its employment agreement represented by the said plaintiff's exhibits A and B, by terminating plaintiff without regard to or compliance with the requirements of the aforesaid agreements." Tolle relies exclusively on exhibits A and B as the basis for her allegation that CTI breached its employment agreement when terminating Tolle. Exhibit A is a booklet entitled "Your Group Health Benefits," and Exhibit B is a booklet entitled "Your Group Insurance Benefits." Tolle specifically alleges that both these booklets provide for "employee benefits plans" governed by ERISA. Considering that Tolle relies on ERISA employee benefits programs as her exclusive basis for this breach of contract claim and considering that Section 502(a)(1)(B) allows participants to bring claims for breach when persons or entities fail to comply with the terms of an employee benefit plan, it is clear that Tolle's allegations under Count 2 raise a

claim for relief under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

■ Now we come to the issue of waiver. Although Tolle's complaint alleges claims under Sections 503 and 502(a)(1)(B), we must address whether Tolle has sufficiently preserved these claims. As we mentioned above, the district court treated Tolle's complaint as though it raised only one ERISA claim, that being a claim under Section 510, 29 U.S.C. § 1140. Tolle's briefs on appeal fail to explicitly argue that the district court's characterization was improper. Indeed, in her statement of the case Tolle characterizes her claim as one under Section 510 of ERISA. Nonetheless, Tolle's brief does point to the fact that the notice given to Tolle with regard to the denial of benefits failed to abide by ERISA regulations. Moreover, footnote 10 of Tolle's brief alleges that she has invoked both Sections 510 and 502 of that statute. Granted, any Section 510 claim *must* raise Section 502's civil enforcement and jurisdiction provisions. *See* 29 U.S.C. § 1132(a)(3), (e). And, admittedly, Tolle seemed to make these points more for the purposes of discussing when a Section 510 claim accrues than for purposes of arguing that she raised something other than a Section 510 claim. As such, Tolle has pushed the bounds of waiver. Yet, considering that Tolle did not have the benefit of the *Bartholet* decision before filing her brief, we will give Tolle the benefit of the doubt. As such, we conclude that Tolle did not waive the right to proceed with regard to her claims for relief under Section 502(a)(1)(B) and 503. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1133.

## B. *Preemption of State Claims*

In addition to stating claims for relief under ERISA, Tolle alleges that Counts 2 and 3 of her complaint raise valid claims for relief under state law. As we have already indicated, Count 2 alleges that CTI's employee benefit plans constituted part of her employment agreement and that CTI breached this agreement by discharging her. And, Count 3 alleges that CTI breached an implied duty of good faith

and fair dealing when CTI terminated her to avoid paying her benefits under these plans. The district court concluded that ERISA preempts these state claims for relief. Tolle disagrees.

■ Congressional intent controls the question of whether ERISA preempts Tolle's state claims. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). The Court has broadly defined the ERISA as " 'a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefits plans.' " *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). Not only has the Court noted the sweeping nature of ERISA's provisions, but Congress in enacting this comprehensive statute provided for broad preemption provision in Section 514 of ERISA, 29 U.S.C. § 1144. This sweeping preemption provision provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has interpreted this broadly drafted preemption provision as "deliberately expansive." *Dedeaux*, 481 U.S. at 46, 107 S.Ct. at 1552. And, consistent with such an expansive interpretation, the Court has concluded that this preemption provision displaces all state laws "within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Mass*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

In light of ERISA's broad purposes and expansive preemption provisions, this court has held that "Congress has blotted out (almost) all state law on the subject of pensions, so a complaint about pensions rests on federal law no matter what label its author attaches." *Bartholet*, 953 F.2d at 1075. The same can be said of employee benefit plans in general.

The Court's decision in *Ingersoll–Rand* is particularly instructive on the preemption issue in this case. In that case the Court held that claims brought under general state law are preempted when the existence of an employee benefit plan is a critical factor in establishing liability under this general law. *Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 483. In *Ingersoll–Rand* the Court had no trouble concluding that ERISA preempted a claim that an employer wrongfully discharged an employee in order to avoid paying benefits under an employee pension plan. Likewise, we have no trouble concluding that ERISA preempts Tolle's state claims for relief.

The Court in *Ingersoll–Rand* emphasized that in order to prevail on its wrongful discharge claim the plaintiff had to demonstrate that an ERISA plan existed and that the motive underlying the wrongful discharge was to interfere with the employee's rights to benefits under the plan. *Id.* Following this reasoning, the Court concluded that any inquiry under such a claim would need to be "directed to" the plan, and therefore the claim related to an ERISA plan within the meaning of ERISA's preemption provision. *Id.* Moreover, the Court further concluded that the claim that the employee was wrongfully terminated in order to prevent the employee from collecting future pension benefits directly conflicted with, and was therefore preempted by, Section 510 of ERISA. *Id.* at ——, 111 S.Ct. at 484–86.

■ We first address ERISA's preemption of Tolle's state breach-of-contract claim raised in Count 2 of her amended complaint. As we stated above, this breach-of-contract claim relies exclusively on the terms of Tolle's employee benefit plans as the basis for breach. Considering ERISA governs these employee benefit plans and considering our prior conclusion that this Count states a claim for relief under Section 502(a)(1)(B) of ERISA, it is clear that this claim for relief is directed to and relies on such plans. Therefore, ERISA preempts this claim.

■ We now move to Tolle's wrongful discharge claim. In this claim Tolle alleges

that CTI violated its implied duty of good faith and fair dealing when it terminated the plaintiff. Just as in Count 2, Tolle points to employee benefit plans as the basis for her claim. That is, Tolle points to exhibits A and B, the ERISA benefit plans, as the underlying basis for this wrongful discharge claim. And, like the plaintiff in *Ingersoll–Rand*, Tolle's claim, therefore, relates to an ERISA plan.

Moreover, ERISA preempts the Count 2 wrongful discharge action for another reason. The wrongful act alleged in Count 3 is that CTI "terminated the plaintiff in order to avoid the payment to her of benefits to which she was or would become entitled to receive" under these ERISA plans. This allegation is essentially a restatement of the above-discussed Section 510 claim contained in Count 1 of Tolle's complaint. As the Court made clear in *Ingersoll–Rand*, Tolle cannot turn a Section 510 ERISA claim into a state claim simply by putting a different label on this claim. As such, ERISA preempts Tolle's wrongful discharge claim for the same reasons that ERISA preempted a similar claim in *Ingersoll–Rand:* because this claim relates to an ERISA plan and because it directly conflicts with Section 510 of ERISA.

■ For the above reasons, we conclude that ERISA preempts Tolle's state claims. Tolle argues, however, that even if ERISA preempts her state claims, she should be allowed to amend her complaint so that she can properly plead state law claims. However, even assuming Tolle could recast her state claims in a manner that would avoid preemption, we will not now entertain such a motion. Rule 15(e) of the Federal Rules of Civil Procedure gave Tolle the opportunity to ask the district court for leave to amend her pleadings. The district court permitted the parties to file motions to amend the pleadings until May 4, 1990. Despite the fact that CTI's answer put Tolle on notice that preemption was at issue, Tolle did not ask the district court for such leave, and we will not now grant such leave.

## C. Statute of Limitations for ERISA Section 510 Claim

We now move to the issue of whether the statute of limitations barred Tolle's ERISA claims. Because the district court treated Tolle's complaint as only raising a claim under Section 510 of ERISA, the district court did not discuss whether the statute of limitations bars Tolle's Section 502(a)(1)(B) or Section 503 claim. Because the district court analysis is so limited and because it seems that Section 510 may afford Tolle with the best chance for her requested relief on the merits, we begin with an analysis of whether the applicable statute of limitations bars Tolle's Section 510 claim.

■ Congress did not provide a statute of limitations for claims premised upon Section 510 of ERISA. When Congress fails to provide a statute of limitations for claims arising under federal statutes, the courts generally turn to the most analogous state statute of limitations. *See Del Costello v. International Bhd. of Teamsters*, 462 U.S. 151, 158–60, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983). Indeed, this court looked to Illinois state law in *Jenkins v. Local 705 International Brotherhood of Teamsters Pension Plan*, 713 F.2d 247 (7th Cir.1983), when determining what statute of limitations applied to the ERISA Section 502(a)(1)(B) claim raised in that case.

*Jenkins* involved an action under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly due under the terms of the employee pension benefit plan and to enforce and/or clarify rights under the terms of that plan. In that case we held that the claim was a creature of contract law and not labor law and that Illinois's ten-year statute of limitations for written contracts, Ill.Rev.Stat. ch. 110, § 13–206, governed the eligibility for benefits. *Jenkins*, 713 F.2d at 252.

It is not clear, however, that the same is true for Section 510 actions. Indeed, the majority of courts of appeals that have addressed this issue have concluded that while the most analogous statute of limitations for Section 502(a)(1)(B) claims are those applicable to actions in contract, the

most analogous statute of limitations for Section 510 claims are based on employment discrimination and/or wrongful termination law. *See Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991) (most analogous state statute of limitations for a Section 510 claim is that for wrongful termination or retaliatory discharge claims); *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778–79 (5th Cir.1991) (most analogous statute of limitations is state statute for wrongful discharge claims); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir.1990) (most analogous statute of limitations is one for employment discrimination); *Gavalik v. Continental Can Co.*, 812 F.2d 834, 843–46 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (applied state statute of limitations for employment discrimination cases). *But see Heideman v. PFL Inc.*, 904 F.2d 1262, 1267 (8th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991) (concluded without analysis that state statute of limitations for contracts covered the Section 510 claim); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1242 (11th Cir.1989) (concluded that Section 510 claims are founded in contract and, therefore, most analogous state statute of limitations was that applicable to contract actions). This court has never decided what state statute of limitations applies to Section 510 claims, nor do we need to decide this important question today because the parties foreclosed this question by prior agreement.

■ While before the district court, Tolle agreed that the applicable statute of limitations for her ERISA Section 510 claim was Ill.Rev.Stat. ch. 110, § 13–205, the Illinois five-year statute of limitations applicable to claims for retaliatory discharge. The parties relied on the district court decision in *Gladich v. Navistar International Transportation Corp.*, 703 F.Supp. 1331, 1334 (N.D.Ill.1989), in reaching this consensus. Tolle now argues, however, that the more applicable statute of limitations is Ill.Rev.Stat., ch. 110, § 13–206, the statute applied to the ERISA Section 502(a)(1)(B) claim in *Jenkins*. Nonetheless, Tolle's earlier agreement as well as her failure to raise the possible applicability of the ten-year statute of limitations for written contracts before the district court both mean that she waived this argument on appeal. *See Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir.1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Considering this waiver, we leave the issue whether courts should look to contract or labor law in choosing an analogous state statute of limitations for Section 510 proceedings for another day and instead proceed under the assumption that Tolle was bound to a five-year statute of limitations.

### D. Accrual of Section 510 Claim

A hotly contested issue in this case is when Tolle's ERISA Section 510 claim accrued. Tolle's claim must have accrued after September 29, 1984, in order for her filing to be considered timely under the five-year statute of limitations. The parties have suggested several possible dates for accrual some of which would mean her filing was timely and some which would not.

■ As we indicated in *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991), even when relying on an analogous state statute of limitations, we look to federal common law for purposes of deciphering the accrual date of a cause of action under a federal statute. *See also Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (borrowed state statute of limitations for Section 1981 claim, but the court's lengthy discussion of accrual never suggested that state law dictated this issue). The district court looked to the reasoning in employment discrimination cases in concluding that Tolle's claim arose on either September 19, 1984, or September 24, 1984, when CTI decided to terminate Tolle and when CTI communicated this intent to Tolle. Because Tolle filed her action on September 29, 1989, over five years after these dates, the district court concluded that the applicable five-year statute of limitations barred her ERISA claim.

Tolle, on the other hand, asks us to look to Section 502(a)(1)(B) cases in order to determine when her Section 510 claim accrued. It is clear that claims under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), accrue when benefits are denied. *Jenkins*, 713 F.2d at 254. Tolle argues that this same rule should apply to her claim. That is, Tolle argues that the statute of limitations for her Section 510 claim accrued when her benefits were denied, which was after September 29, 1984.

 This court has never considered what event or events dictate accrual under Section 510 of ERISA. The starting point for determining when a claim accrues is the alleged unlawful conduct. In other words, we first ask what alleged unlawful conduct forms the basis for the claim and when this act occurred. *See Ricks*, 449 U.S. at 257, 101 S.Ct. at 503 (determining the timeliness of Ricks' employment discrimination claim "requires us to identify precisely the 'unlawful employment practice' of which he complains."); *see also Cada*, 920 F.2d at 450. Determining when the unlawful act serving as the basis for the claim occurred is not, however, the end of the accrual analysis under federal common law. Rather, under the federal discovery rule, a claim accrues once the party performs the alleged unlawful act and once the party bringing a claim discovers an injury resulting from this unlawful act. *Cada*, 920 F.2d at 450.

Because Tolle argues that Section 502(a)(1)(B) and 510 claims accrue at the same point, we return to, and elaborate upon, our prior discussion with regard to the underlying nature of these two Sections. As we indicated above, a Section 502(a)(1)(B) claim is essentially an assertion of one's contractual rights under the terms of an employee benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B); *Jenkins*, 713 F.2d at 252–53. And, in providing for such a cause of action, Section 502(a)(1)(B) assures that claimants are not denied benefits under the terms of an employee benefit plan. As such, it is not surprising that courts have routinely held that Section 502(a)(1)(B)

claims accrue when such benefits are denied. *See, e.g., Jenkins*, 713 F.2d at 254.

 Nonetheless, the different nature of Section 510 calls for a different focus when determining when claims under this Section accrue. As we already mentioned, Section 510 is not aimed at assuring that both sides abide by the written terms of the contract. Rather, this Section is aimed at preventing persons and entities from taking various actions for the purpose of interfering with the participant's ability to collect benefits to which the participant would otherwise be entitled or from taking actions to prevent such a participant from collecting benefits to which he or she may become entitled. *See* 29 U.S.C. § 1140; *Felton*, 940 F.2d at 512. In hopes of accomplishing these purposes, Section 510's express language provides that a defendant can be liable for unlawful interference *before* the participant becomes entitled to benefits under the terms of the plan. 29 U.S.C. § 1140 (making unlawful various actions when these actions are done "for the purpose of interfering with the attainment of any right to which such a participant *may become entitled* under the plan.") (emphasis added). For example, suppose an employer knows that an employee has a medical problem which will eventually require significant treatment. Further suppose that *before* the employee incurs any such expenses or makes any request for employee benefits with regard to this condition, the employer terminates this employee for the purpose of avoiding the payment of future medical expenses under an ERISA employee benefit plan. Under Section 510's express language, this employee would have a Section 510 claim even though this employee never made a formal or informal request for benefits and even though the employer never denied such a request. *See* 29 U.S.C. § 1140; *and compare Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 485 ("By its terms § 510 protects plan participants from termination motivated by an employer's desire to *prevent* a pension from vesting.") (emphasis added). Considering that a defendant can violate Section 510 *before* the defendant has considered or denied a request for benefits, we

must reject Tolle's argument that accrual under Section 510 turns on the denial of benefits. *See Held*, 912 F.2d at 1205 ("The accrual of a [Section 502] claim for benefits under the plan does not necessarily coincide with the timing of the employer's alleged violation of § 510."); *Heideman*, 904 F.2d at 1267 (no indication that application for or denial of benefits was relevant to the accrual of a Section 510 claim that employer discharged Heideman in order to avoid payment of medical benefits; rather, indicates that it was enough that the defendant "was aware of [the participants'] health problems....").

Because the relevant portions of Section 510 aim to prevent employers and other persons from taking action for purposes of preventing a participant from or punishing a participant for exercising his or her rights under a plan, the accrual of Section 510 claims turns on such actions. This conclusion is in accord with the reasoning of the eighth and ninth circuits. *See Heideman*, 904 F.2d at 1267 (claim that defendant discharged Heideman in order to avoid the payment of benefits accrued when Heideman was terminated); *Held*, 912 F.2d at 1205 (Held's claim that he was discharged in order to prevent him from collecting vested rights under a retirement plan accrued when Held was constructively discharged).

■■■ In this case, Tolle alleges that CTI violated Section 510 when terminating her for purposes of avoiding the payment of employee benefits to which Tolle was entitled or would have been entitled if she would have continued in her employment relationship with CTI. Because this conduct is the essence of Tolle's Section 510 claim, it is the *termination* that was allegedly done for *purposes* of avoiding payment of benefits and Tolle's discovery of this action which serve as the basis for accrual.

This, however, does not end our analysis. Instead, the next question becomes whether the relevant date for accrual is the date of actual termination or the date in which the termination decision was made and communicated to Tolle. Tolle's termination took effect on October 19, 1984. Because her filing on September 29, 1989, was less than five years after this termination date, if the statute accrues on her actual termination date, Tolle filed her claim within the five-year statute of limitations. Tolle runs into problems, however, if the statute accrued on the date in which the decision was made and communicated to her.

The district court looked to employment discrimination cases in answering this question. Considering that the focal point of Tolle's claim is the employment termination and the employer's reasons for making that decision, employment discrimination cases, which in many cases focus on an employer's reasons for making various employment decisions, do indeed provide a useful analogy. *Compare Felton*, 940 F.2d at 512; *McClure*, 936 F.2d at 778–79; *Held*, 912 F.2d at 1205 (in each of these cases other courts of appeals analogized Section 510 claims to either state wrongful discharge claims or state employment discrimination claims for purposes of determining which state statute of limitations applied to such claims). In *Ricks* the Supreme Court addressed the question of when a cause of action based on the discriminatory denial of tenure accrued. And, in that case the Court held that the statute of limitations for Section 1981 and Title VII claims accrued at the time of the employment decision, not when the consequences of that decision came into effect. That is, in *Ricks* the Court held that because the allegedly discriminatory act was the decision to deny tenure, the Section 1981 and Title VII claims accrued on the date in which the decision was made and communicated, not on the date in which Ricks' employment actually ended. *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. Likewise, this court in *Cada* held that Cada's claim for employment discrimination accrued once the employer made the termination decision and once the employee discovered he had been terminated. *Cada*, 920 F.2d at 450.

Because the purpose of Section 510, like intentional employment discrimination cases, is to prevent actions taken for an unlawful purpose, it is the decision and the

participant's discovery of this decision that dictates accrual. This means that Tolle's claim accrued when CTI made and communicated this decision to Tolle.

CTI argues that this means that the statute of limitations accrued on September 19, 1984, when Nick Tableriou, CTI's Plant Manager, informed her that her employment would be terminated. Or, in the alternative, CTI argues that the claim accrued on September 24, 1984, when Tableriou sent Tolle a letter confirming the fact that she would be terminated. Because Tolle filed this action on September 29, 1989, over five years after either of these dates, if CTI is correct, then the previously agreed five-year statute of limitations bars Tolle's Section 510 ERISA claim.

■■■ Tolle argues, however, that there is a factual issue as to whether CTI made and communicated its decision to terminate her before October 19, 1984—her actual termination date. That is, Tolle argues that a reasonable reading of the record indicates that CTI failed to give Tolle an unequivocal notice of termination on either September 19th or September 24th because this notice was conditioned upon her ability to receive medical benefits. For this reason, Tolle argues that there is at least a factual question as to whether CTI made or communicated a decision to terminate before the October 19th termination date. We do not agree.

Tolle's basis for arguing that CTI did not make a final termination decision on either September 19, 1984, or September 24, 1984, is that any decision to terminate was contingent upon whether Dr. Bloomfield would certify her as disabled. This argument, however, ignores the fact that the September 24th letter regarding Tolle's termination stated in unequivocal terms that she would be terminated on October 19, 1984. This letter, which left no room for contingencies, indicates that CTI made and communicated its termination decision on that date. Furthermore, Tolle's argument ignores the fact that any contingency with regard to the termination decision did not arise until October 1, 1984, when Tolle orally requested medical benefits and medical leave.

Considering that the gist of Tolle's Section 510 claim is that CTI made an unlawful termination decision, the focus of the Section 510 claim and the accrual of the claim is CTI's intent when making that decision. *See* 29 U.S.C. § 1140. Tolle's *post-decision* acts could not change the reasons underlying CTI's *prior* termination decision. And, for this reason, Tolle's *post-decision* application for benefits had no effect on the legality of CTI's prior employment decision, nor did it affect the accrual of her Section 510 claim. *Compare Ricks*, 449 U.S. at 260–61, 101 S.Ct. at 505–06 (fact that tenure decision was subject to change if Ricks was successful in the grievance process did not postpone the accrual date). Consequently, Tolle's Section 510 ERISA claim accrued by at least September 24, 1984, when she was notified by memorandum of CTI's termination decision. This was over five years before September 29, 1989—the date on which Tolle filed her complaint.

### E. *Equitable Tolling*

■■■ Tolle, however, makes one last argument in an attempt to save her ERISA Section 510 claim from dismissal. That is, Tolle argues that the doctrine of equitable tolling acts to toll her claim for the period from accrual until November 8, 1984, when she was informed that Dr. Bloomfield refused to classify her as disabled. As we noted in *Cada*, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. *See also Lynn Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 (7th Cir.1992) (the majority and concurring opinions contain a lively discussion of the application of the discovery rule, equitable tolling, and equitable estoppel in the fraudulent concealment context under ERISA, 29 U.S.C. § 1113). Because CTI apparently agreed to place Tolle on medical leave if Dr. Bloomfield classified her as disabled, Tolle argues that this information was vital to her claim. Nevertheless, we need not

reach this issue because Tolle has otherwise failed to make a case for equitable tolling.

In *Cada* we explained that even if a plaintiff demonstrates that he or she was unable to obtain information necessary to his or her claim until after accrual, this does not automatically result in an extension of time. *Cada,* 920 F.2d at 452–53. Rather, we held that a plaintiff invoking equitable tolling must file his or her claim within a reasonable time after he or she has or should have obtained this vital information. *Id.* at 453. Following this line of reasoning, we held that when the statute of limitations runs *after* the plaintiff obtains information vital to his or her claim, then the presumption is that the plaintiff could have and should have brought suit within the statutory period. *Id.*

Tolle argues that we should toll the statute of limitations for approximately thirty days. Nonetheless, Tolle had nearly four years and eleven months after obtaining the so-called vital information in which to file her claim. Considering the brevity of any delay caused by her lack of information regarding her disability status and the significant period of time in which she had to file after this delay, Tolle has clearly failed to rebut the presumption that she should have brought her claim within the five-year statute of limitations. And, as such, Tolle cannot invoke the doctrine of equitable tolling to revive her otherwise barred Section 510 ERISA claim. We, therefore, affirm the district court's dismissal of Tolle's Section 510 ERISA claim on the basis that the five-year statute of limitations barred this claim.

### F. *Remand of Remaining ERISA Claims*

Having affirmed the district court's dismissal of Tolle's state claims on the basis of preemption and having affirmed the dismissal of Tolle's Section 510 claim under the agreed-to statute of limitations, we now come to the question of what to do with the Section 503 and 502(a)(1)(B) claims not addressed by the district court opinion.

First, we note that it is unclear whether Tolle has agreed that the five-year statute of limitations applied to any ERISA claim or just the Section 510 ERISA claim. As for Tolle's Section 502(a)(1)(B) claim this will not make much difference because, as our above discussion makes clear, any claim under that section arises when benefits are denied. Tolle's benefits were denied sometime after her October 1, 1984, oral application for such benefits. Moreover, a claim under Section 503 would also seem to pass a five-year statute of limitations because a claim based on the failure of adequate notice and the failure of adequate process would not seem to arise until such notice and process was due and/or wrongfully given. And, in this case the alleged deficient notice and process pertained to her denial of benefits, meaning that her claim seems to have accrued sometime after Tolle's oral request for benefits. As such, this claim also seems to have arisen within five years of the filing of the complaint. Nonetheless, considering that the district court has never addressed the applicability of the statute of limitations to Tolle's claims under Section 503 or Section 502(a)(1)(B), the district court should have the opportunity to consider these issues and any other issues which might arise with regard to these claims.

### III.

For the above reasons, we affirm the dismissal of Tolle's state claims and her claim under Section 510 of ERISA. However, we remand this case for further proceedings with regard to Tolle's claims for relief under Sections 502(a)(1)(B) and 503 of ERISA claims not clearly presented to the district court.

The parties will bear their own costs in this court.

AFFIRMED IN PART AND REMANDED IN PART.