Mark **HOODACK**, Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES, INC.,**
Defendant.

**No. 00 Civ. 1814(NRB).**

United States District Court,
S.D. New York.

Feb. 28, 2002.

Robert Joseph Tolchin, Jaroslawicz & Jaros, New York City, for Plaintiff.

John Houston Pope, Hogan & Hartson, L.L.P., New York City, for Defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff, Mark Hoodack ("Hoodack" or "plaintiff") filed this lawsuit on March 7, 2000, alleging that his termination as an employee of defendant International Business Machines, Inc. ("IBM" or "defendant") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Currently before the Court is defendant's motion for summary judgment on grounds that plaintiff's claim is time barred under the applicable statute of limitations. For the reasons that follow, defendant's motion for summary judgment is granted.[1]

## BACKGROUND

The undisputed facts are as follows.[2] Hoodack was an employee of IBM for over twenty nine years. *See* Compl. ¶ 5. Towards the end of this period, in November of 1996, fraud charges were brought against plaintiff in Nassau County, though no action was taken by IBM at that time. *See* Hoodack Depo. at 10–22, 225–26. Shortly thereafter, Hoodack had some difficulties with his supervisor, Maria Losey ("Losey"), over an allegation that in the course of performing his job as a meeting planner, he had been abusive to a manager at the Las Vegas Hilton Hotel. *See id.* at 37–40. As described in plaintiff's complaint, plaintiff's relationship with Losey was already tenuous, as demonstrated by Losey's 1995 lawsuit to recover money Hoodack owed her and her later attempts to garnish plaintiff's wages. *See* Compl. ¶¶ 13–16. Hoodack met with Losey to discuss early retirement, specifically discussing the Retirement Bridge Leave of Absence ("RBLOA"), a program that would allow Hoodack to leave in advance of his 30 year employment anniversary while retaining the retirement benefits that accrue after thirty years of service. *See* Compl. ¶¶ 6–10; Hoodack Depo. at 38; Pope Decl., dated Sept. 7, 2001, Ex. E, F. Subsequently, on February 21, 1997, Hoodack sent Losey an e-mail requesting a six month separation pay benefit and a six month bridge to retirement, and proposing that he leave IBM on April 7, 1997. *See* Pope Decl., dated Sept. 7, 2001, Ex. E.

However, on March 20, 1997, prior to this proposed departure date and before Hoodack officially enrolled in the RBLOA

---

1. Defendants further request that the Court order plaintiff to show cause why he should not be sanctioned under Rule 11 and 28 U.S.C. § 1927. While we find plaintiff's arguments in opposition to this motion without merit, we decline to issue such an order.

2. Unless specifically noted, all facts stated herein are drawn from plaintiff's complaint and the parties' submissions in connection with the present motion, including deposition transcripts, affidavits or declarations, and other exhibits attached thereto.

program, Hoodack was arrested and incarcerated in Westchester County on charges of grand larcey. Hoodack and his family members left messages for Losey in order to enroll Hoodack in the RBLOA program, and plaintiff asserts that Losey intentionally blocked these efforts. On March 27, 1997, Losey notified Hoodack in a letter he received shortly thereafter that his employment was terminated, effective immediately. One stated reason for the termination was Hoodack's failure to follow management direction with respect to the incident concerning the Hilton Hotel. Further, this letter stated,

It is our view after having reviewed the allegations made against you by the Westchester County District Attorney's office that your continued employment would seriously adversely affect IBM. In addition, it is our belief that the activity you have been alleged to have engaged in is is of a nature that seriously adversely affects IBM. As such, you are not eligible for either a Retirement Bridge Leave of Absence or separation pay.

See Pope Decl., dated Sept. 7, 2001, Ex. C. Hoodack pled guilty to the charges in Nassau and Westchester counties, and served a sentence of three years.

Beginning with a letter from plaintiff's first attorney in connection with this matter, dated May 2, 1997, there was a flurry of letter writing between plaintiff and Vincent J. Mauriello ("Mauriello"), IBM's Plan Administrator for the RBLOA program and the Separation Allowance Plan. On August 4, 1997, plaintiff's second attorney requested information and related documents concerning the denial of retirement benefits expressed in Losey's March 27

letter. See Pope Decl., dated Dec. 14, 2001, Ex. L. Plaintiff made a further request for information in a letter of September 29, 1997. See id., Ex. M, N. A series of letters subsequently followed addressing the merits of IBM's denial and the validity of the procedures surrounding this denial. See id., Ex. O, P, Q. The record indicates that the final letter from plaintiff to Mauriello was dated June 15, 1998, and the final letter from Mauriello to plaintiff was dated August 13, 1998. See id.; Pl.'s Decl. in Opp'n Ex. A. Among the reasons cited by Mauriello for denying Hoodack's participation in the RBLOA program was that Hoodack had failed to meet the program requirement of abiding by IBM's Business Conduct Guidelines, as interpreted and administered by IBM management. See Pope Decl., dated Dec. 14, 2001, Ex. P.

Plaintiff's complaint was filed on March 9, 2000, following which defendants filed a motion to dismiss asserting the statute of limitations defense. This motion was denied by Judge Parker, who held that defendant's argument would be more appropriately raised in a motion for summary judgment after adequate discovery. The parties subsequently agreed that the only issues to be resolved in this case are: (1) whether IBM violated the provisions of § 510 of ERISA, 29 U.S.C. § 1140, with respect to the RBLOA program when it terminated plaintiff on March 27;[3] (2) if so, what damages plaintiff suffered; (3) and whether plaintiff's action was barred by the statute of limitations. See Joint Scheduling Order, dated Jan. 29, 2001, at 1–2. Defendant restricted the scope of this motion for summary judgment, which

---

**3.** Though the Complaint initially alleged a claim under ERISA § 502, plaintiff has apparently confined himself to a claim under § 510. See Joint Scheduling Order, dated Jan. 29, 2001; Def.'s Mem. at 5 n.2. Further, plaintiff has conceded that the separation pay benefit originally requested was purely discretionary by its terms and he has stipulated to the dismissal of any claims seeking recovery of separation pay benefits. See Pl.'s Mem. in Opp'n to Mot. to Dismiss at 2 & n.1.

was filed on September 7, 2001, to the statute of limitations issue alone. This case was subsequently transferred to me in November of 2001.

### DISCUSSION

■ Section 510 of ERISA, 29 U.S.C. § 1140, states in relevant part that "[i]t shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Section 510 protects employees from terminations "motivated by an employer's desire to prevent a pension from vesting," ensuring that employers cannot "circumvent the provision of promised benefits". *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Because Congress did not provide a statute of limitations for claims arising under ERISA, courts apply the statute of limitations of the state cause of action most analogous to the federal claim. *Sandberg v. KPMG Peat Marwick,* 111 F.3d 331, 333 (2d Cir. 1997). For claims brought pursuant to § 510, the Second Circuit has held that courts in this circuit are to borrow the two year statute of limitations applied in retaliatory discharge actions under New York Workers' Compensation Law § 120 (McKinney 1994). *Id.* at 334–37.

IBM argues that Hoodack's claim accrued when he was notified of his termination shortly after March 27, 1997, and that because his complaint was filed nearly three years later, it is time barred under the two year statute of limitations. In

response, plaintiff argues that his claim did not accrue until he had exhausted the administrative appeals process. Alternately, plaintiff argues that even if his claim accrued upon termination, the statute of limitations should be tolled while he utilized the administrative review procedures. For the following reasons, we reject plaintiff's arguments.

### 1. Accrual of Plaintiff's § 510 Claim

■ Though the Second Circuit has never reached the specific question of when a § 510 claim accrues, other Courts of Appeals have held that a § 510 claim accrues when an employer decides to terminate an employee and communicates that decision to the employee.[4] *See Burrey v. Pacific Gas & Elec. Co.,* 159 F.3d 388, 397 (9th Cir.1998); *Musick v. Goodyear Tire & Rubber Co.,* 81 F.3d 136, 137–139 (11th Cir.1996) (per curiam); *Teumer v. General Motors Corp.,* 34 F.3d 542, 549–50 (7th Cir.1994); *Held v. Manuf. Hanover Leasing Corp.,* 912 F.2d 1197, 1205 (10th Cir.1990); *Heideman v. PFL, Inc.,* 904 F.2d 1262, 1267 (8th Cir.1990). This rule has been similarly applied by courts in this district. *See Green v. Int'l Business Machines, Inc.,* No. 01 Civ. 2334(CM), 2001 WL 736811, *2 (S.D.N.Y. June 22, 2001) (finding that claim accrued on the day plaintiff found out that his bridge leave was being terminated); *McCauley v. First Unum Life Ins. Co.,* No. 97 Civ. 7662(LMM), 1998 WL 846121, *6 (S.D.N.Y. Dec. 2, 1998) (holding that claim accrues when employee becomes aware of the unlawful practice); *Barnett v. Int'l Business Machines, Inc.,* 885 F.Supp. 581, 592 (S.D.N.Y.1995) ("A claim accrues under § 1140 when the employer decides to dis-

---

4. We note that a claim under New York Workers' Compensation Law § 120, from which we borrow the limitations period for a § 510 claim, accrues at the time of the wrong-

ful termination as well. *Stabak v. ISS Int'l,* 248 A.D.2d 814, 814–15, 670 N.Y.S.2d 242, 243–44 (3d Dept.1998).

charge an employee and communicates that decision to him."). This standard is also consistent with Second Circuit cases holding that the statute of limitations in ERISA actions begins to run upon the beneficiary's notice of the violation. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (1983); *McCauley v. First Unum Life Ins. Co.,* No. 97 Civ. 7442(LMM), 1998 WL 846121, *6 (S.D.N.Y. Dec. 2, 1998) (citing *Miles* for this proposition).

Casting his § 510 claim as a wrongful termination and denial of benefits by a supervisor with a personal vendetta against him, plaintiff urges the Court to adopt a rule that would encourage similarly situated plaintiffs to appeal such a decision to more neutral decision-makers before seeking judicial intervention. *See* Mem. in Opp'n at 6. Plaintiff, in essence, proposes that the Court require exhaustion of administrative remedies for claims under § 510, correctly noting that if he were in fact required to exhaust his administrative remedies, it would be illogical for his claim to accrue upon termination because such a rule might allow his claim to expire while he pursued mandatory administra-

tive channels of relief. However, plaintiff's argument proceeds from a misunderstanding of the cause of action he seeks to assert.

■ Section 510 protects against employer actions taken with the purpose of aborting the vesting of pension rights to which an employee is entitled. *Sandberg,* 111 F.3d at 334. Unlike a claim under § 502 that an employee has been denied benefits due under a plan, a claim under § 510 is essentially one of retaliatory discharge, focusing on the employment decision rather than plan coverage.[5] *Id.* at 335–36; *Tolle v. Carroll Touch Inc.,* 977 F.2d 1129, 1133 (7th Cir.1992) (explaining the distinction between the two kinds of claims). As defendant correctly points out, plaintiff's argument fails to explain how his appeals to plan administrators, first to get information about the RBLOA program and later to contest the denial of benefits, could correct the harm of which he complains, namely an allegedly unlawful termination decision by his IBM supervisors. *See* Def.'s Reply Br. at 3.

■ Further, the weight of legal authority refutes plaintiff's argument that exhaustion should be required.[6] A majority

---

5. Claims brought for failure to pay benefits due under a plan pursuant to § 502, 29 U.S.C. § 1132, are deemed to accrue "when there has·been a repudiation by the fiduciary which is clear and made known to the beneficiaries." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (1983); *Mitchell v. Shearson Lehman Brothers, Inc.,* No. 97 Civ. 0526(MBM), 1997 WL 277381, *2 (S.D.N.Y. May 27, 1997). Where a claimant pursues administrative review of the denial of benefits, accrual occurs when the plan administrator or insurer communicates a repudiation or denial of benefits that is "clear, unequivocal, and continuing." *Mitchell,* at *2 (citing *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 65 (7th Cir.1996)). Moreover, unlike claims brought under § 510, a claimant seeking re-

lief under § 502 is required to exhaust the remedies provided for under the plan. *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (1993) ("[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) (noting same).

6. Such a rule garners further support when analogized to similar claims in the employment discrimination area. *Delaware State College v. Ricks,* 449 U.S. 250, 259–61, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (holding that statute of limitations for § 1981 and Title VII claims commenced to run when the employment decision was made and the employee was notified, and rejecting argument that

of circuits have taken the position that exhaustion is not a prerequisite to bringing suit under § 510.[7] In *Tolle*, the Seventh Circuit explained,

> Considering that the gist of [plaintiff]'s Section 510 claim is that [defendant] made an unlawful termination decision, the focus of the Section 510 claim and the accrual of the claim is [defendant]'s intent when making that decision. [Plaintiff]'s *post-decision* acts could not change the reasons underlying [defendant]'s *prior* termination decision. And, for this reason, [plaintiff]'s *post-decision* application for benefits had no effect on the legality of [defendant]'s prior employment decision, nor did it affect the accrual of her Section 510 claim.

977 F.2d at 1141. *See also Welland v. Trainer*, No. 00 Civ. 0738(JSM), 2000 WL 1848501, *1 (S.D.N.Y. Dec. 18, 2000) (treating § 510 claim as though there is no exhaustion requirement); *Yoran v. Bronx–Lebanon Hosp. Center*, No. 96 Civ. 2179(PKL), 1999 WL 378350, *7 n.5 (S.D.N.Y. June 10, 1999) ("The exhaustion requirement does not ... apply to plaintiff's § 510 wrongful discharge claim."); *MacKay v. Rayonier, Inc.*, 25 F.Supp.2d 47, 50 (D.Conn.1998) (holding that exhaustion requirement should not be applied to claims under § 510 under a similar analysis as that in *Tolle*). As exhaustion of administrative remedies would be ineffective and is not required for a claim under

§ 510, we accordingly find that Hoodack's claim accrued shortly after he received the termination letter, and that his § 510 claim is barred under the statute of limitations.

## 2. Availability of Tolling Doctrines

■ Plaintiff argues that the statute of limitations on his § 510 claim should be tolled during the pendency of his administrative appeals. Though the defendant bears the burden of showing that the limitations period has expired, the burden shifts to the plaintiff to establish that the limitations period should be tolled. *Overall v. Estate of L.H.P. Klotz*, 52 F.3d 398, 403 (2d Cir.1995). Having borrowed New York's limitations period for analogous state claims, we look to New York law to determine whether the borrowed limitations period should be tolled. *Board of Regents University of State of N.Y. v. Tomanio*, 446 U.S. 478, 486, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Schultz v. Texaco, Inc.*, 127 F.Supp.2d 443, 448 (S.D.N.Y.2001) (citing *Tomanio* ).

■ Plaintiff has offered no authority for the proposition that the statute of limitations should be tolled, nor has he even specified the tolling doctrine on which he relies. As codified at C.P.L.R. §§ 204, 205, 207, and 208, New York law permits tolling of the statute of limitations in five circumstances, none of which apply in this case.[8] *Schultz*, 127 F.Supp.2d at 448–49

---

grievance procedure postpones accrual or tolls limitations period).

7. *See Smith v. Sydnor*, 184 F.3d 356, 364 (4th Cir.1999); *Richards v. General Motors Corp.*, 991 F.2d 1227, 1235 (6th Cir.1993); *Held v. Manuf. Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir.1990); *Zipf v. AT & T*, 799 F.2d 889 (3d Cir.1986); *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984). *But see Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir.1992) (holding that unless administrative appeal would be futile, exhaustion is required); *Lindemann v. Mobil Oil Corp.*, 79

F.3d 647, 650 (7th Cir.1996) (holding that exhaustion principles apply to § 510 claims, but the district court has discretion as to whether to require exhaustion).

8. The statute of limitations may be tolled where: (1) the commencement of the action has been stayed by a court or statutory prohibition; (2) a dispute later determined to be non-arbitrable was sent to arbitration; (3) an action was timely commenced but dismissed (other than for certain reasons) and refiled within six months of the dismissal; (4) the defendant is outside New York when the

(listing these tolling rules and finding them inapplicable to a claim under § 510). As plaintiff has not argued that the defendant either concealed or induced him to forego his cause of action, there is likewise no tolling based on equitable estoppel. *Id.* at 449. Accordingly, we find that plaintiff has failed to meet his burden of establishing that the limitations period should be tolled.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on grounds that plaintiff's cause of action is barred under the statute of limitations is granted. The Clerk of Court is respectfully directed to forthwith close this case.

**IT IS SO ORDERED.**

claim accrues; and (5) when a plaintiff is disabled by infancy or insanity at the time of accrual. *Schultz,* 127 F.Supp.2d at 448–49 (citing the relevant provisions of the C.P.L.R.).