Edmond C. **TEUMER**, Plaintiff,

v.

**GENERAL MOTORS CORPORATION,**
Defendant.

No. 92 C 1855.

United States District Court,
N.D. Illinois, E.D.

Dec. 9, 1993.

Jerry L. Lambert, Frank Alan Hauenschild, Connie J. Lambert, Stinespring, Lambert & Associates, Flossmoor, IL, for plaintiff.

Michael A. Warner, Marcia A. Mahoney, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter arises out of Defendant General Motors Corporation's ("GMC") lay off in 1986 of Plaintiff Edmond C. Teumer in connection with a reduction in force at a GMC Electro Motive Division ("EMD") manufacturing facility in 1986. Plaintiff filed suit in March 1992 alleging that the lay off and subsequent recall of Plaintiff violated ERISA section 510. The Court addresses here Defendant's Motion for Summary Judgment. For the reasons stated below, Defendant's motion is granted.

### Background

About certain facts there is no dispute. Plaintiff Edmond C. Teumer was hired by GMC's Electro Motive Division on July 28, 1971. From that point until his lay off effective April 30, 1986, he was employed by EMD at Plant 207. In 1977, Plaintiff was promoted to a Production Supervisor position, which GMC refers to by job code 6M08.

In May 1985, Plaintiff's job classification was changed from Production Supervisor to Quality Control Supervisor, job code 6R41. The paperwork prepared by GMC's Personnel Department to effect the change stated that the transfer was for "developmental purposes only." Plaintiff thought that this change was the result of the outsourcing of production and the transfer of an existing 6R41 supervisor to another plant.[1]

This change in Plaintiff's classification apparently was initiated in conjunction with an effort initiated by GMC in late 1984 to restructure its first-line supervisory positions.[2] Plaintiff was placed into the Operations Supervisor position without his knowledge.

---

1. Defendant has conceded the truthfulness of this fact, as well as numerous other facts stated in Plaintiff's Rule 12(N) statement, for purposes of this motion only. Defendant maintains, however, that this fact and the others so conceded are untrue. (Def.'s Resp. to Pl.'s Counterstatement of Facts pursuant to Local Rule 12(N) at 1.)

2. According to an October 1, 1984 GMC memorandum discussing the proposal, GMC intended to establish a new position called "Operations Supervisor" and move "the most capable individuals among [the] existing supervisors" into those positions. (Exh. A to Def.'s Memo. of Law in Support of its Mot. for Summ.J. at 1-2.)

Plaintiff was the only person ever placed into the new program.

As of March 1, 1986, Plaintiff was performing Production Supervisor duties and his classification was changed back to 6M08, where it remained until he was laid off. At some point during 1986, Ken Ford, an Administrator in EMD's Salaried Administration Department, deleted—incorrectly—the 6R41 experience from Plaintiff's work record. Ford was aware that the deletion would affect Plaintiff with respect to lay-off decisions, but did not know whether the affect would be positive or negative.

Plaintiff was laid off effective April 30, 1986, along with a number of other employees and supervisors at Plant 207. During the period Plaintiff was laid off, he received two years of layoff benefits. Plaintiff had fourteen years and nine months of service with GMC at the time he was laid off. Of the other 6M08 supervisors laid off with Plaintiff, some had more than fifteen years' service and others did not.

At the time Plaintiff was laid off, GMC had already begun to plan for the eventual "closing" of Plant 207. A May 13, 1985 letter entitled "Divisional Policy Covering Plan 207 Salaried Employes [sic] Placement and Recall Rights" set out the policy for "handling displaced salaried personnel at Plant 207 during the time prior to the Plant closing in calendar 1987." (Exh. D to Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ.J. at 1 (hereafter "Pl.'s Mem. of Law").) The policy provided that personnel engaged in factory and factory support operations at Plan 207 would be allowed a one-time opportunity to "displace low service employes at the same level, or one below" if they had worked for GMC for at least five years, had greater length of service than the "bumped" employee, and had "the ability to perform the work with minimal indoctrination and training." (*Id.*) At an April 7, 1986 meeting of Plant 207 supervisors, Plaintiff was told that none of the supervisors attending the meeting qualified for a transfer to another plant or for bumping rights.

Because Plaintiff was in a 6M08 position at the time he was laid off, his lay-off and recall rights were to a 6M08 position.[3] Plaintiff was eligible for recall to a 6R41 Quality Control position in line with his length of service only after all individuals who had been Quality Control Supervisors at the time they had been laid off were recalled.

Plaintiff returned to nontemporary full time employment in September 1991, when he was awarded the 6M08 position he currently holds.[4] Plaintiff was temporarily recalled twice between May 1986 and September 1991. He was temporarily recalled to a job code 6S05 Production and Material Control position at the Hodgkins Warehouse facility from May 1989 to December 1989. He also was recalled for a temporary 6S05 position in March 1991.[5]

Defendant concedes, for purposes of this summary judgment analysis, that GMC did not follow its corporate practice of applying corporate policies consistently in its dealings with Plaintiff. At least one supervisor junior to Plaintiff was recalled to a position for which Plaintiff had superior recall rights, contrary to GMC corporate and divisional recall policy.

Throughout the period of Plaintiff's layoff, GMC maintained an Income Protection Plan ("IPP"). IPP provides income to long-time GMC employees who have been laid off and whose layoff benefits have expired. An employee is eligible for IPP benefits if he "had at least 15 years' length of service (10 years' length of service with respect solely to a

---

**3.** The GMC lay-off policy in effect for Plant 207 specified that lay offs are determined job code by job code. Employees within a job code are to be laid off in reverse seniority order, with certain exceptions. Employees received an "outstanding" rating in their last performance review or who have been downgraded from a higher-level position are exempted from lay off.

An employee whose pre-lay off position was in one job classification was entitled to be recalled to jobs in other classifications if he had once served in such a classification, but only if every employee who held that classification when laid off had already been recalled.

**4.** Plaintiff's current position is at EMD's Hodgkins Warehouse facility.

**5.** It is unclear whether Mr. Teumer's temporary 6S05 position lasted until he was awarded his current position in September 1991.

plant closing situation) on the last day the employee worked prior to the effective date of such layoff." (Exh. I of Def.'s Mem. of Law at § 2(b).)

Plaintiff was not eligible for IPP benefits when he was laid off. GMC categorized the May 1986 reductions in force at Plant 207 as a "plant consolidation" rather than as a "plant closing." As a result, only those employees who had at least fifteen year's service were eligible for IPP benefits. Plaintiff had less than the required fifteen years' service at the time he was laid off.

The parties agree that Ken Ford, the GMC official responsible for determining the order in which Plant 207 employees would be laid off, did not discuss IPP benefits with anyone at GMC in making lay-off decisions. Ford also did not know how the IPP program was funded, other than the fact that it was not the financial responsibility of the individual plant. Plaintiff admitted in deposition testimony that he does not know who determined IPP eligibility.

In late 1989, Plaintiff requested a meeting with GMC Personnel Department officials to discuss his concerns regarding the recall of other GMC employees prior to his recall. Such a meeting was consistent with GMC's so-called "Open Door Policy." After his meeting with the Personnel Department, he continued to pursue his concerns with other members of GMC's management, consistent with the Open Door Policy. Plaintiff exhausted the avenue provided by the Open Door Policy in April 1990 when he received a letter from Vice President Richard F. O'Brien.[6]

Plaintiff brought this action on March 17, 1992. He subsequently amended his complaint twice, filing an Amended Complaint on August 4, 1992, and a Second Amended Complaint on February 22, 1993. Plaintiff has requested and received two extensions of the discovery period.

Count I of Plaintiff's Second Amended Complaint alleges that GMC interfered with Plaintiff's attainment of his IPP benefit when it laid him of on April 30, 1986. (Second Am.Compl. at ¶ 22.) Count I alternatively alleges that Defendant interfered with Plaintiff's attainment of his IPP benefits when Defendant did not identify Plant 207's shutdown as a plant "closure," (Id. at ¶¶ 23–24), and when it failed to transfer Plaintiff in accordance with GMC's stated policy. (Id. at ¶¶ 25–27.) Count II of Plaintiff's Second Amended Complaint alleges that Defendant interfered with Plaintiff's attainment of his IPP benefits by failing to recall Plaintiff to a position at another facility even though certain employees with less seniority (namely, Lawrence J. Radziwon, Nora Shaughnessy, Michael C. Brown, Roy Canada, and Joseph R. Slifka) had been assigned to supervisory positions at those plants. (Id. at 32.) Defendant filed its motion for summary judgment on July 8, 1993.

### Discussion

In order to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether the there is a genuine issue for trial, i.e., "whether a proper jury question was presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We must view all evidence in the light most favorable to the party opposing the motion for summary judgment, here the plaintiff. *Bowyer v. U.S. Dep't of Air Force*, 804 F.2d 428, 430 (7th Cir.1986). However, if that party bears the burden of proof at trial on a dispositive issue, that party is required "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265

---

**6.** According to GMC's Open Door Policy, the final determination for the corporation is made by the Vice President, Personnel Administration and Development Staff. At the time Plaintiff was pursuing the Open Door Policy, that position was held by Mr. O'Brien.

(1986), quoting Fed.R.Civ.P. 56(e). Ultimately, if "alternate inferences can be drawn from the available evidence, summary judgment is inappropriate." *LHLC Corp. v. Cluett, Peabody, & Co.*, 842 F.2d 928 (7th Cir.1988).

However, the non-moving party must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48, 106 S.Ct. at 2510. Whether or not a disputed fact is material depends solely on the applicable substantive law. *Id.* at 248, 106 S.Ct. at 2510.

### I. *Defendant's Claim that Plaintiff's Claim is Time–Barred*

Defendant first argues that it is entitled to summary judgment as to Count I of Plaintiff's complaint because Plaintiff's lay-off related claims are time-barred. Defendant cites a decision rendered by another court in this district for the proposition that the applicable limitations period is five years. Plaintiff disagrees. According to Plaintiff, the correct statute of limitations is the ten year statute of limitations applicable under Illinois law to breaches of written contracts and Count I is not time-barred.

Plaintiff raises three additional arguments in response to Defendant's statute of limitations defense. Plaintiff argues first that his claim is not time barred because his cause of action did not accrue until he discovered his injuries in November 1989. (Pl.'s Mem. of Law at 4–5.) Plaintiff next argues that the statute of limitation was tolled until he exhausted the administrative remedies available to him under Defendant's corporate policy. (*Id.* at 5–6.) Finally, Plaintiff argues that the running of the statute of limitations must be tolled under the doctrine of equitable estoppel. (*Id.* at 9–12.)

In deciding whether or not Defendant is entitled to summary judgment on Count I on this ground, the Court must address three issues. First, we must determine the limitations period applicable to Section 510 claims. Second, we must determine when Section 510 claims accrue generally and then decide whether there is a genuine issue with regard to when Plaintiff's Count I claims accrued. Finally, we must decide whether the statute of limitations should be tolled either by Plaintiff's pursuit of GMC's Open Door Policy or under the equitable estoppel doctrine.

■ ERISA does not specify what limitations period should be used for Section 510 claims. As such, the Court determines the most analogous claim under state law and applies the applicable state statute of limitations. *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251 (7th Cir.1983).

■ As Plaintiff points out, the Seventh Circuit has not yet reached the question of which Illinois claim is most analogous to a Section 510 claim. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129 (7th Cir.1992). Nonetheless, its discussion in *Tolle* suggests that it is likely to look to labor law rather than contract law in choosing an analogous Illinois statute of limitations. In comparing claims under Sections 502 and 510 of ERISA, the Seventh Circuit noted that

> The difference between enforcing the terms of a plan and assuring that parties do not somehow impinge on current or future rights under employee benefit plans may seem subtle at first glance, but upon a close examination it becomes clear that the distinction is great. In order to enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in the plan. Rather than concerning itself with these qualifications, one of the actions which Section 510 makes unlawful is the interference with a participant's ability to meet these qualifications in the first place.

*Tolle*, 977 F.2d at 1134. The court also commented that "the majority of courts of appeals that have addressed this issue have concluded that while the most analogous statute of limitations for Section 502(a)(1)(B)

claims are those applicable to actions in contract, the most analogous statute of limitations for Section 510 claims are based on employment discrimination and/or wrongful termination law." 977 F.2d at 1137–38 (citing *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991) (most analogous to wrongful termination or retaliatory discharge claims); *McClure v. Zoecon, Inc.*, 936 F.2d 777 (5th Cir.1991) (most analogous to wrongful discharge claims); *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197 (10th Cir. 1990) (most analogous to employment discrimination claim); *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3rd Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (applied statute for employment discrimination claims); *Heideman v. PFL Inc.*, 904 F.2d 1262 (8th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991) (concluding without analysis that state statute for contracts applied); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989) (concluding that section 510 claims founded in contract and most analogous state statute of limitations is one applicable to contract claims)).

This Court sees no reason to take a different path from that taken by the majority of circuits and the one that seems to be favored by the Seventh Circuit. We decline Plaintiff's invitation to treat a Section 510 claim as a breach of contract claim. (Pl.'s Mem. of Law at 3.) The key to section 510 claims is not whether an employer breached the terms of a written contract between employer and participant, but whether the employer took actions for the purpose of interfering with the participant's benefit rights. *See Tolle*, 977 F.2d at 1139. Thus, we look to claims available under Illinois labor law.

■ After comparing the purposes and remedies of those state-law claims with the purpose and remedies of Section 510, the Court finds that the most analogous state law claim is one for retaliatory discharge. "The emphasis of a Section 510 action is to prevent persons and entities from taking actions which might cut off or interfere with a partic-

ipant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Tolle*, 977 F.2d at 1134 (citing 29 U.S.C. § 1140; *Felton v. Unisource Corp.*, 940 F.2d 503, 512 (9th Cir. 1991)). The tort of retaliatory discharge focuses on similar conduct: the attempt by employers to discourage employees from exercising their rights by firing them. Both claims compensate the employee for the wrongful adverse employment action.

Having determined the most analogous state law claim, we apply the state statute of limitations applicable to that claim. Actions for retaliatory discharge are governed by Illinois' five-year statute of limitations. *Berghoff v. R.J. Frisby Mfg. Co.*, 720 F.Supp. 649 (N.D.Ill.1989); *Henon v. Lever Bros. Co.*, 114 Ill.App.3d 608, 70 Ill.Dec. 322, 449 N.E.2d 196 (1983). Thus, the applicable limitations period is five years. We turn next to the issue of when Section 510 claims accrue.

■ The Seventh Circuit's decision in *Tolle* leaves no doubt that a Section 510 claim accrues when the employer makes the decision to take the unlawful action and communicates that decision to the participant. *Tolle*, 977 F.2d at 1139–40.

> Because the relevant portions of Section 510 aim to prevent employers and other persons from taking action for purposes of preventing a participant from ... exercising his or her rights under a plan, the accrual of Section 510 claims turns on such actions....
>
> ....
>
> Because the purpose of Section 510, like intentional employment discrimination cases, is to prevent actions taken for an unlawful purpose, it is the decision and the participant's discovery of this decision that dictates accrual.

977 F.2d at 1140–41 (emphasis in original).[7]

There is no genuine issue of fact with respect to the accrual of Plaintiff's Count I

---

**7.** The Seventh Circuit in *Tolle* expressly foreclosed the possibility raised by Plaintiff that his claim accrued when he would have become eligible for

benefits. 977 F.2d at 1139–40 ("Considering that a defendant can violate Section 510 *before* the defendant has considered or denied a request

claims given the Seventh Circuit's holding in *Tolle.* Those claims are based on Defendant's decisions to lay of Plaintiff and to call the reduction in force at Plant 207 a plant "consolidation" rather than a plant "closing." The discovery rule delayed the accrual of Plaintiff's lay-off related claims only until Defendant made those decisions and communicated those decisions to Plaintiff. According to the law in this Circuit, that is when Plaintiff discovered the injury remedied under Section 510. The fact that he did not discover until later certain facts that allegedly support his claim does not change the result, even if his assessment of the importance of those facts is correct.

There is no genuine issue with respect to the accrual of Plaintiff's Count I claims. Those claims accrued no later than May 1986—more than five years prior to the commencement of this action.[8] As a result, Defendant is entitled to summary judgment unless Plaintiff is entitled to have the running of the statute of limitations tolled. The Court addresses first Plaintiff's argument that we should toll the statute of limitations because he was exhausting his administrative remedies.

██ We do not understand the law of this Circuit to require this Court to toll the statute of limitations on a Section 510 claim while an employee pursues the administrative remedies available to him or her. The application of the administrative exhaustion doctrine is left to the sound discretion of the district court. *Powell v. AT & T Communications, Inc.,* 938 F.2d 823, 826 (7th Cir.1991); *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 466 (7th Cir.1986) (citing *Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244 (7th Cir.1983)). Nothing in those cases suggests that the statute of limitations is to be tolled while an employee exhausts his administrative remedies. To read them to require such tolling

might put them at odds with the Seventh Circuit's decision in *Tolle* that the limitations period begins to run when the employee learns of the alleged unlawful decision.[9]

██ Plaintiff's pursuit of GMC's Open Door Policy does not justify the tolling of the statute of limitations. First, and most importantly, nothing in record before us even suggests that Plaintiff was pursuing a Section 510 claim (or any ERISA claim) when he availed himself of Defendant's Open Door Policy. Plaintiff himself characterizes the grievance that caused him to request a meeting with Personnel Department officials as the discovery "that certain persons were employed in positions to which he felt entitled," a characterization that does not raise the issue of Plaintiff's IPP benefits. (Pl.'s Mem. of Law at 6.) The letter that represented GMC's "final word" on the issue raised by Plaintiff did not mention IPP benefits at all. (Exh. E of Pl.'s Mem. of Law.)

Furthermore, the Court doubts whether the Open Door Policy represents the type of administrative remedy that would trigger the exhaustion doctrine. Employees are not required to avail themselves of the program. (Exh. B of Pl.'s Mem. of Law at 8.) The program is designed to assure open communication between employees and management, not as a method of appealing adverse employment or benefit decisions. (*Id.*) As a result, Plaintiff's pursuit of GMC's Open Door Policy provides an especially weak basis for tolling the statute of limitations— assuming that such tolling is even permissible after *Tolle.* The Court concludes that Plaintiff's discussions of his grievance regarding his bump and recall rights with members of GMC's management do not justify tolling the statute of limitations.

for benefits, we must reject Tolle's argument that accrual under Section 510 turns on the denial of benefits." (emphasis in original)).

8. We note that they actually may have accrued earlier. GMC held a meeting for supervisors like Plaintiff in April 1986 to discuss the upcoming lay-offs. Plaintiff's first knowledge of Defendant's decision to lay him off and its decision to call the shutdown a "consolidation" may have

come at this point or even earlier. This issue was not raised by the parties and nonetheless is not material because Plaintiff's claims are barred even using the later May 1986 date.

9. Because *Tolle* addressed the accrual of Section 510 claims, it may be that the question of tolling for the exhaustion of administrative remedies never arose.

Plaintiff's next argues that his claim is not time-barred under the doctrine of equitable estoppel. Plaintiff maintains that "Defendant's improper conduct in misrepresenting the plant closure and denial by Defendant of Plaintiff's ability to transfer ("bump") to another plant" is a "classic example" of a circumstance justifying equitable estoppel. (Pl.'s Mem. of Law at 12.) Plaintiff alleges that Defendant made certain misrepresentations regarding employees' inability to transfer to another facility and the characterization of the facility shut down as a "plant consolidation" and not a "plant closing." (*Id.* at 10–11.) He alleges that he "relied on these representations as being truthful and therefore had no reason nor any basis for challenging his layoff . . . [or] the veracity of the Plant Manager's characterization or the plant closing as a consolidation." (*Id.* at 11.)

■ "Tolling doctrines [like equitable estoppel] stop the statute of limitations from running even if the accrual date has passed." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990). Equitable estoppel "is available only under limited circumstances." *Smith v. City of Chicago Heights,* 951 F.2d 834, 840–41 (7th Cir.1992). It "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada,* 920 F.2d at 450–451 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 396–397, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946); *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 292 (7th Cir.1986); *Taylor v. Meirick,* 712 F.2d 1112, 1118 (7th Cir. 1983)).

■ According to the Seventh Circuit, we are to look for " ' "a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations" ' and ' "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct." ' " *Smith,* 951 F.2d at 841 (quoting *Aungst v. Westinghouse Elec. Corp.,* 937 F.2d 1216, 1225 (7th Cir.1991) (quoting *Mull v. ARCO Durethene Plastics, Inc.,* 784 F.2d 284, 292 (7th Cir.1986))). "In essence, equitable estoppel focuses on whether the defendant acted *affirmatively* to stop or de-

lay the plaintiff from bringing suit within the limitations period." *Smith,* 951 F.2d at 841.

■ The Court finds that Defendant did not conduct itself in a manner that would estop them estop it from raising the statute of limitations defense to Count I. Plaintiff simply never produced any evidence that Defendant took the kind of actions that justify a tolling of the statute of limitations under an equitable estoppel theory. There is no evidence that Defendant promised Plaintiff that it would not plead the statute of limitations as a defense. There is no evidence that Defendant presented forged documents in an effort to justify its actions.

There is simply no evidence that Defendant took affirmative action to deceive Plaintiff. On the contrary, the uncontroverted evidence suggests that Defendant made no secret that the facility shut down would *not* be considered a plant closing, (Pl.'s Mem. of Law at 10; Aff. of Michael C. Brown at ¶ 10; Aff. of Michael J. O'Rourke at ¶ 10.), and that such a classification would affect the affected employees' IPP benefit rights. (*See* Pl.'s Mem. of Law, Exh.K.)

Plaintiff's rationale for why the Court should toll the statute of limitations is virtually identical to the justification offered by the plaintiff and rejected by the Seventh Circuit in *Cada,* notwithstanding the differing statutes involved. Because we find the similarities between the two cases compelling, we will set out the facts of *Cada* case in some detail.

Cada had been told that the department in which he was working was being reorganized and that because he did not intend to retire he would be terminated. *Cada,* 920 F.2d at 448. He later brought suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq. Id.,* 920 F.2d at 448. The district court granted summary judgment in favor of the defendant on the ground that the suit was time-barred. On appeal, Cada argued that the statute of limitations should have been tolled under the doctrine of equitable estoppel because the reorganization of the department was merely "a ruse to conceal the plan to fire him because of his age." *Id.* at 451.

The Seventh Circuit rejected Cada's argument. The court took great pains to clarify what conduct would constitute the "fraudulent concealment" that formed the basis for equitable estoppel.

> Equitable estoppel in the limitations setting ... must not be confused with efforts by a defendant in a fraud case to conceal the fraud.... Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—*above and beyond the wrongdoing upon which the plaintiff's claim is founded*—to prevent the plaintiff from suing in time.
>
> If Baxter had told Cada that it would not plead the statute of limitations as a defense to any suit for age discrimination that he might bring, this would be a case for equitable estoppel; so also if Baxter had presented Cada with forged documents purporting to negate any basis for supposing that Cada's termination was related to his age.

*Cada,* 920 F.2d at 451 (emphasis added).

The court noted that Cada's argument "merges the substantive wrong with the tolling doctrine, ignoring [the] distinction between two types of fraud. It implies that a defendant is guilty to fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.'" *Id.* at 451.

The situation presented here is remarkably similar the situation addressed by the Seventh Circuit in *Cada.* The gist of Plaintiff's claim is that Defendant's actions in laying him off, declining to attribute his lay off to a "plant closing," and delaying his recall were intended to deprive Plaintiff of benefits due him under the IPP program—an impermissible intent under section 510. (Pl.'s Mot. in Opp. to Def.'s Mot. for Summ.J. at 17–19.) Thus, as in *Cada,* Plaintiff's action is based on a claim that Defendant adversely affected Plaintiff's employment relationship for an impermissible reason.[10] Also like the plaintiff in *Cada,* Plaintiff claims that the reasons

given by Defendant for Defendant's actions were pretextual. (*Id.* at 19.) Plaintiff's equitable estoppel argument suffers the same infirmity as the one advanced by the plaintiff in *Cada.* The problem with Plaintiff's theory is that it, like the one advanced by Cada, "merges the substantive wrong with the tolling doctrine." *Cada,* 920 F.2d at 451. In both cases, the claim of pretext and the claim of fraudulent concealment merge.

The Court finds that Plaintiff has not met his burden of demonstrating that there is a genuine issue of material fact with respect to the statute of limitations issue. Plaintiff's claim accrued no later than April 30, 1986, the date on which he was laid off. He filed his complaint on March 17, 1992, more than nine months after the expiration of the applicable five-year limitations period. Nothing in the record justifies tolling the statute of limitations. The Court therefore holds that Plaintiff's claim in Count I is time-barred.

## II. Defendant's Claim that Plaintiff Cannot Prove the Required Unlawful Intent

Defendant GMC maintains that it is entitled to summary judgment as to both Counts I and II of Plaintiff's complaint because Plaintiff has not shown that there is a genuine issue of fact with regard to Defendant's discriminatory intent in laying off Plaintiff, in treating the reduction in force as a "consolidation," or in recalling Plaintiff. According to Defendant, Plaintiff must prove that Defendant had the specific intent of interfering with Plaintiff's IPP benefits in order to prevail in a Section 510 action, but Plaintiff has no such evidence. Because we determined above that Count I is time-barred we address Defendant's argument with respect to Count II alone.

> ERISA Section 510 provides that
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to

---

**10.** The Court sets aside, for the moment, the issues raised by Defendant regarding the legal sufficiency of Plaintiff's pleadings and assumes that Plaintiff's allegations are sufficient to state a cause of action under ERISA § 510.

which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plan Disclosure Act. 29 U.S.C. § 1140 (West 1985). A participant whose rights have been so abridged may bring a civil action (A) to enjoin the act or practice which violates section 510 or the terms of his employee benefit plan, or (B) to obtain appropriate equitable relief to redress the violation of section 510 or to enforce section 510 or the terms of his plan. *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1133 (7th Cir.1992); 29 U.S.C. § 1132(a)(3)(A), (B) (West 1985).

■ " '[I]t has been recognized that the primary focus of § 510 is to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.' " *Meredith v. Navistar Int'l. Transp. Co.*, 935 F.2d 124, 127 (7th Cir.1991) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir.1991) (quotations omitted)). In order to recover under Section 510, a participant must show that the employer took the allegedly unlawful action " 'because of a specific intent to interfere with ERISA rights . . .; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the [action].' " *Meredith*, 935 F.2d at 127 (quoting *Dytrt v. Mountain State Tel. & Telegraph Co.*, 921 F.2d 889, 896 (9th Cir.1990) (citations omitted)). The plaintiff must show a " 'conscious decision to interfere with the employee's attainment' " of benefits. *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3rd Cir.1990) (quoted in *Meredith*, 935 F.2d at 127).

■ If the plaintiff does not produce direct evidence that the defendant took adverse legal actions with the specific intent of interfering with plaintiff's employee benefits, *Meredith* sets out a burden-shifting procedure for evaluating indirect proof of a discriminatory intent. *See* 935 F.2d at 127 ("If Meredith had made a prima facie case showing that Navistar discharged or harassed him and that the desire to reduce his pension benefits was a 'determinative factor' in that action, the burden would have shifted to Navistar to articulate a permissible reason for its action."). The result is that "in addition to directly proving a discriminatory motive for firing, a plaintiff may prevail upon a showing that the employer's legitimate reason is unworthy of credence, that is, that the reason supplied was not the true reason for the unfavorable employment decision." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1113 (2nd Cir.1988) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

■ As we read *Meredith*, *Meredith*'s burden-shifting test establishes a higher threshold than the one set out in *Burdine* and applied in ADEA and Title VII cases.[11] A plaintiff must show both that (1) the employer took an action that adversely affected plaintiff's benefit rights, and (2) the employer's desire to adversely affect those rights was a " 'determinative factor' " in the action in order to make out a *prima facie* case for a Section 510 claim. *Meredith*, 935 F.2d at 127 (quoting *Turner*, 921 F.2d at 347). At that point, the burden shifts to the defendant employer to prove a legitimate reason for its action. *Id.* *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the employer has done so, the burden shifts back to the employee to prove by a preponderance of the evidence that the employer's articulated reason is pretextual. *See Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093.

■ It is clear from the Seventh Circuit's holding in *Meredith* that Plaintiff cannot prevail simply by showing that the *effect* of GMC's actions in connection with his recall was to deprive him of IPP benefits. He must show that the determinative factor in GMC's decisions was its desire to deprive

11. As set out in *Burdine*, the burden of establishing a *prima facie* case for disparate treatment under Title VII "is not onerous." 450 U.S. at 253, 101 S.Ct. at 1093. In the context of a Title VII case, a plaintiff must prove "that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.*

him of his IPP benefits. He must show a specific intent. In the summary judgment context, this means that Plaintiff must designate specific facts in the record that demonstrate that there is a genuine issue with regard to the existence of such an impermissible intent.[12]

Regardless of whether we apply the *Meredith* standard or the less demanding (as we perceive it) *Burdine* standard, the Court finds that Plaintiff has failed to adduce the evidence necessary to demonstrate that there is a genuine issue of fact regarding the existence of an impermissible intent to interfere with Plaintiff's IPP benefits through (mis)-application of recall policy.[13] Plaintiff has adduced no evidence from which we can infer that the "determinative factor" in GMC's actions with regard to Plaintiff's recall was a desire to deprive him of IPP benefits. Thus, under *Meredith*, Plaintiff cannot meet his burden of establishing a *prima facie* case. The evidence also does not support the inference of pretext necessary to rebut Defendant's proffered rationales. Plaintiff thus cannot meet the burden set out in *Burdine*.

Plaintiff has not designated specific facts that show the existence of a genuine issue with regard to the issue of whether Defendant's actions were specifically intended to interfere with Plaintiff's attainment of his IPP benefits. None of the facts identified by Plaintiff as showing that Plaintiff "established a *prima facie* case of discrimination" (Pl's Mem. of Law at 16) allow the Court to infer the specific intent required under *Meredith*.

We cannot infer specific intent from evidence that "other employees with less seniority were recalled to RETA [temporary recall] positions in which they had no prior experience." (Pl.'s Mem. of Law at 16.) First,

there is no evidence that this action could have affected Plaintiff's IPP benefits. Furthermore, there is no evidence that GMC minimized its IPP obligations by preferentially choosing such employees.

Likewise, evidence that the removal of Plaintiff's quality control experience from Plaintiff's personnel record may have affected his recall rights, (Pl.'s Mem. of Law at 16), does not create a genuine issue with regard to Defendant's intent. In light of the undisputed facts that the person who took such action (1) did not know what the impact would be on Plaintiff's recall rights, (2) did not discuss IPP benefits with anyone prior to making his decision, and (3) knew nothing about the funding of IPP benefits other than that the benefits were not funded by the employee's own plant, the Court cannot infer that the "determinative factor" in deleting that experience was a desire to interfere with Plaintiff's IPP benefits.

The evidence is insufficient to withstand summary judgment even if the Court applies *Burdine*. The evidence that Plaintiff's work record was wrongly modified when his quality control experience was deleted gives rise to an inference that GMC discriminated against Plaintiff. Defendant, however, introduced evidence that the change was made to align Plaintiff with his peers given his actual work experience—a legitimate nondiscriminatory reason that rebuts the presumption of discriminatory intent. That shifts the burden back to Plaintiff to discredit the explanation as pretextual and it is here that Plaintiff fails to demonstrate that there is a genuine issue of fact.

Plaintiff has not demonstrated that there is a genuine issue with regard to the validity of Defendant's stated rationale for the chal-

---

12. For a fact to be material to our inquiry here, it must relate to the issue of specific intent—in other words, it must be relevant to the issue of whether the determinative factor in Defendant's actions with respect to Plaintiff's recall was GMC's desire to interfere with Plaintiff's IPP benefits. The facts cited by Plaintiff with respect to Plaintiff's recall and indeed most of the evidence in the record shed no light on that issue. Thus, the fact that they may be disputed does not defeat Defendant's motion for summary judgment.

13. The Court notes that Count II of Plaintiff's second amended complaint alleges nothing more than the fact that GMC "discriminated against Teumer which did interfere or had the effect of interfering with his attainment of IPP benefits by failing to recall [him]." (Second Am.Compl. at ¶ 32.) Thus, Plaintiff has not alleged the existence of the necessary specific intent.

lenged action. There is no evidence that "a discriminatory reason more likely motivated" GMC or that GMC's explanation "is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. There is no evidence that any of the recall-affecting actions challenged by Plaintiff saved Defendant money by reducing its IPP obligations with respect to Plaintiff or by reducing its IPP obligations overall. There is no evidence that Defendant acted out of any animus toward Plaintiff. There is nothing more than evidence that GMC (1) may have applied its recall policy in an inconsistent manner and (2) incorrectly modified Plaintiff's personnel record. That is not enough.

The Court holds that there is no genuine issue of material fact with respect to GMC's intent to interfere with Plaintiff's IPP benefits. Disputes as to the existence of breaches in corporate policy or the discriminatory effect of Defendant's actions do not provide a reason for presenting Count II to a jury. Despite a rather extenuated discovery period, Plaintiff simply has not adduced the evidence necessary to withstand Defendant's motion for summary judgment with respect to Count II.

### Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to both Counts I and Count II.