Conrad DISHINGER, Plaintiff,

v.

SUN PROCESS CONVERTING, INC., Defendant.

No. 92 CV 6054.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 7, 1994.

Thomas F. Nedderman, Thomas F. Nedderman & Associates; Barry Charles Kessler, Kessler & Powen, Chicago, IL, and Stanley K. Stewart, Medline Industries, Inc., Mundelein, IL, for plaintiff.

Donald James McNeil, Michael James Mueller, and Lisa E. Grampo, Keck, Mahin, & Cate, Chicago, IL, for defendant.

### *MEMORANDUM AND ORDER*

MORAN, Chief Judge.

Plaintiff Conrad Dishinger (Dishinger) was employed by defendant Sun Process Converting, Inc. (Sun) for eight years as its shipping manager. In September 1990, Dishinger was terminated by Sun ostensibly because an important shipment was delivered three days late. While at Sun, Dishinger was covered under the employee group medical plan which paid for his cancer treatments during the summer of 1988. Dishinger's cancer was in remission for two years prior to his discharge. In 1992 Dishinger filed this ERISA action, 29 U.S.C. § 1001 *et seq.*, alleging that the real reason behind his discharge was Sun's desire to eliminate his potentially large medical claims on their partially self-insured employee medical insurance. Sun filed this motion for summary judgment claiming that Dishinger has failed to make out a *prima facie* case under ERISA, or in the alternative, claiming that they have articulated a non-pretextual justification for the discharge. For the following reasons, Sun's motion is granted.

## BACKGROUND

The factual background is taken from the pleadings and the parties' Local Rule 12 statement of facts. Dishinger came to Sun in January 1982, to work as its shipping manager. His immediate supervisor was Ronald Weingardt, vice-president and part owner of Sun. In June 1988, Dishinger was diagnosed as having throat cancer and subsequently received 37 radiation treatments costing a total of $3700, which was covered under Sun's employee group medical plan. By September 1988, Dishinger's doctors advised him that his cancer was in remission. In 1989 Sun switched to a partially self-insured employee medical plan, which meant that Sun would be liable for the first $25,000 of an employee's medical bills, after which amount a reinsurer (paid for by Sun) would cover any excess.

On September 17, 1990, Sun needed to send a shipment to its biggest client, Anchor Continental (Anchor), who was particularly insistent on receiving shipments in a timely manner. Dishinger shipped this delivery through Golden Transportation Systems (Golden), a shipper never used before by Dishinger or Sun, instead of Consolidated Freightways, a major national shipper used most frequently by Sun. The shipment to Anchor was temporarily lost by Golden and delivered three days late, much to the dismay of Anchor who threatened to take their business elsewhere. While the shipment was missing, those at Anchor and the Sun sales staff were very confused as to where the shipment actually was. Weingardt blamed Dishinger for the tardy shipment and fired him immediately..

■ Following his discharge, Dishinger filed a claim for unemployment insurance benefits, which was denied by the Illinois Department of Employment Security (IDES) on the grounds that Dishinger willfully disobeyed his supervisor (Weingardt). In 1992

Dishinger filed this present action alleging that Sun's decision to terminate his employment was actually motivated by its desire to limit its potential liability under its partially self-insured employee group medical plan and therefore violated § 510 of the Employee Retirement Income Security Act (ERISA).[1]

In its motion for summary judgement Sun claims, first, that Dishinger cannot make out a *prima facie* case for discrimination, and, second, even if a *prima facie* case is established it has articulated a non-pretextual reason for the discharge.

## DISCUSSION

■ Our first task is to determine what legal framework governs § 510 discrimination claims. Neither the Seventh Circuit nor the Supreme Court have had much of an opportunity to comment on § 510. Both parties before us have argued this case using the *McDonnell Douglas/Burdine* framework used in Title VII and ADEA cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). We are inclined to use that formulation as well, on the strength of *Meredith v. Navistar Int'l Transportation Corp.*, 935 F.2d 124 (7th Cir.1991). In *Meredith*, also a § 510 ERISA case, the court held that "[i]f [the plaintiff] had made a *prima facie* showing that [the defendant] discharged or harassed him, and that the desire to reduce his [medical] benefits was a 'determinative factor' in that action, the burden would have shifted to [the defendant] to articulate a permissible reason for its action." *Id.* at 127. This analysis seems to invoke the *McDonnell Douglas/Burdine* framework. Furthermore, Judges Marovich and Plunkett have also found the *McDonnell Douglas/Burdine* scheme to be appropriate in § 510 cases. *See Szymanska v. Abbott Laborato-*

---

1. Section 510 of ERISA states in part "It shall be unlawful for any person to discharge ... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Discharge for the purposes of denying an employee medical coverage is actionable under § 510. *Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir. 1983). The substantive rights granted in § 510 are enforced by participants through § 502(a)(3). *Powell v. AT & T Communications, Inc.*, 938 F.2d 823, 825 (7th Cir.1991) (citing 29 U.S.C. § 1132(a)(3)).

*ries,* 1994 WL 118154 at *14 (N.D.Ill. Mar. 29, 1994); *Teumer v. General Motors,* 840 F.Supp. 538, 548 (N.D.Ill.1993) (*aff'd on other grounds,* 34 F.3d 542 (7th Cir.1994)).

The *McDonnell Douglas/Burdine* scheme for analyzing employment discrimination claims is well settled. The plaintiff has the burden of establishing a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. If the plaintiff meets his burden, "the burden shifts to the [defendant] 'to articulate some legitimate nondiscriminatory reason'" for the discharge. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant satisfies its burden, the plaintiff can save his case only by demonstrating that the reason given by the defendant was a pretext for illegal discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. At this stage the plaintiff must demonstrate that the desire to deny benefits was a "determining factor" in the discharge. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984) (ADEA case).

■ Under this framework Dishinger has the burden of showing a *prima facie* case for benefit-based discrimination. There is a split in this district as to what the elements of the *prima facie* case are. Judge Plunkett has required a "higher threshold" than that used under *Burdine* by requiring plaintiffs, as part of their *prima facie* case, to show that benefit discrimination was a determining factor. *Teumer,* 840 F.Supp. at 532. Judge Marovich, however, has specifically rejected that test in favor of a test adopted in the Third Circuit that is more consistent with *Burdine.* That test has three prongs: "the plaintiff must show that he (1) belongs to the protected class, (2) was qualified for the position involved, and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present." *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 347 (3d Cir.1990) (citing *Dister v. Continental Group*

*Inc.,* 859 F.2d 1108, 1115 (2d Cir.1988)); *Szymanska,* 1994 WL 118154 at *15.[2] We align ourselves with Judge Marovich and use the Third Circuit test for two reasons. First, while *Meredith* does not specifically specify the elements of the *prima facie* case, it did cite *Turner* in its analysis, thus providing tacit approval. Second, we find no reason to deviate from the *Burdine* formulation of the plaintiff's *prima facie* case.

■ Dishinger clearly can satisfy the first prong of the *prima facie* test—prior to discharge he was covered under Sun's employee medical plan. In addition, we accept for the moment Dishinger's claim that he was qualified for the position and therefore can meet the second prong. However, Dishinger cannot satisfy the third prong of the test since he provides no evidence linking his discharge to Weingardt's specific intent to deny him medical benefits.

Dishinger offers two theories to support his contention that his discharge was benefit-motivated. First, Dishinger claims that there is a general perception that cancer reoccurs and that a reoccurrence of cancer under Sun's self-insured medical plan would expose Sun to potentially significant liability. Unfortunately for Dishinger, there is nothing that links Weingardt to this alleged general perception. Even if we were to assume that Weingardt harbored this perception, Dishinger offers nothing that indicates that Weingardt thought that *Dishinger's cancer* might return (indeed, Weingardt claims he never even knew that Dishinger had cancer). Dishinger has failed to provide any evidence upon which a reasonable jury could find that Weingardt had the specific intent to deny him benefits.

Moreover, to the extent that Dishinger's argument rests on the assumption that the mere fact that he was once sick and now does not receive benefits is enough to establish a *prima facie* case—it runs directly counter to settled law on this issue. The Seventh Circuit has held that "no action lies where the alleged loss of rights is a mere consequence, as opposed to a determining factor behind the termination." *Meredith,* 935 F.2d at 127

---

**2.** As opposed to the stricter test which requires the plaintiff to show that discrimination was a determining factor at the *prima facie* case stage, this test only requires the plaintiff to show "circumstances that provide some basis for believing that the prohibited intent was present," leaving the "determinative factor" showing until after the defendant has met his burden.

(quoting *Dytrt v. Mountain State Telephone and Telegraph Co.*, 921 F.2d 889, 896 (9th Cir.1990)). Dishinger has not produced any evidence indicating that denying him medical coverage was a factor, rather than a mere consequence of his termination.

Dishinger also claims to have uncovered a pattern of discharging "sick employees" after Sun's adoption of a self-insured medical plan. Dishinger highlights four employees who were terminated by Sun after incurring high medical bills.[3] While we doubt that four terminations from a company with over 100 employees can establish a pattern, especially in light of the undisputed evidence that the employees with the three highest claims were all retained by Sun, we still may be inclined to give Dishinger the benefit of the doubt, as we must at this stage. However, what is fatal to Dishinger's claim is that *he* was not a "sick employee." Dishinger's cancer was in remission for over two years before his discharge and there is no evidence that he incurred any unusually large bills during that time. Therefore, even if Dishinger can prove his pattern claim at trial, it is irrelevant since Dishinger is not even in the class he highlights. Since we find both of Dishinger's arguments unavailing, he has failed to satisfy even a *prima facie* case of benefit-based discrimination, thus making summary judgment proper.

■ Furthermore, even if we did agree with Dishinger that he has made out a *prima facie* case, we would still grant summary judgment since Sun has articulated a legitimate, non-pretextual reason for the discharge. Sun claims it terminated Dishinger because of the tardy shipment to Anchor, which went awry because of the carrier Dishinger selected. We find this reason to be legitimate and thus rebuts Dishinger's *prima facie* case.

Dishinger's last resort would be to demonstrate through competent evidence that the proffered reason was pretextual. Dishinger attempts to show pretext in two ways. First, by claiming that he did nothing wrong with respect to the Anchor shipment, and second, by claiming that Sun has changed its story regarding his discharge, which thus demonstrates pretext.

■■ Dishinger's first theory misunderstands the pretext inquiry. The pretext analysis does not authorize the court to second-guess personnel decisions. As the Seventh Circuit has held, "the question is not whether the ratings were *right* but whether the employer's description of its reasons is *honest.*" *Gustovich v. AT & T Communications Inc.*, 972 F.2d 845, 848 (7th Cir.1992) (ADEA case) (emphasis original). Dishinger cannot show pretext by his own self-serving statements that he did nothing wrong with respect to the Anchor shipment. Disagreement with Weingardt's assessment of fault does not create a genuine issue that Sun's articulated justification for the discharge was pretextual.

■ Dishinger's final theory for showing pretext is his contention that Sun has allegedly proffered different reasons for his discharge to the IDES and to this court. Dishinger claims that before the IDES Sun sought to prove (and did to that fact-finder) that Dishinger disobeyed his supervisor, while here Sun allegedly focuses on Dishinger's poor judgment in selecting Golden. We, however, find nothing inconsistent in Sun's position taken before us and the IDES. Sun has consistently claimed that it fired Dishinger for selecting Golden instead of Consolidated Freightways. For instance, in its answer Sun claimed that "it terminated Plaintiff from his employment for poor performance [which] included Plaintiff's failure to follow oral and written instructions regarding a freight shipment" (Dft's ans. ¶ 10). Thus it is clear that Sun has never changed its story regarding why it terminated Dishinger. Therefore, because Dishinger cannot demonstrate pretext, Sun has rebutted any *prima facie* case and is entitled to summary judgment.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.

---

3. Sun claims that all four employees were terminated for cause.