Linda **BERRY**, Nancy Sellers, Terri Lynn Smith, Esther Stafford, Mary Sutter, Linda "Susan" Harrell, and others similarly situated, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. 1:98–CV–1758.

United States District Court, E.D. Texas, Beaumont Division.

March 18, 2003.

James Michael Papantonio and Bryan Frederick Aylstock of Levin, Middlebrooks, Mabie, Thomas & Mayes, Pensacola, FL, Karl E. Novak of Ness, Motley, Loadholt, Richardson & Poole, Mt. Pleasant, SC, Brent Wayne Coon, of Brent Coon & Associates, Beaumont, TX for Plaintiffs.

Richard Roland Brann of Baker Botts, LLP, Houston, TX, Brady Sherrod Edwards of Edwards & George, LLP, Houston, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT*

SCHELL, District Judge.

This matter is before the court on the following two motions: (1) "Defendant's Motion for Summary Judgment" (Dkt.# 23), filed on February 17, 1999; and (2) "Defendant's Second Motion for Summary Judgment" (Dkt.# 35), filed on March 5, 1999. Defendant's first motion for summary judgment is based on the statute of limitations and Defendant's second motion for summary judgment is based on the merits of the case. Plaintiffs filed a response to both of Defendant's motions on May 12, 1999. Defendant filed a reply to Plaintiffs' response on June 1, 1999 and a Supplement to its second motion for summary judgment on July 5, 2000, followed by Plaintiffs' Notice of Supplemental Authority on August 17, 2001, and Defendant's Supplemental Authority on August 23, 2001, and Second Supplemental Authority on November 4, 2002. Upon consideration of the parties' written submissions, exhibits, affidavits, and the applicable law, the court is of the opinion that Defendant's first motion for summary judgment should be GRANTED and Defendant's second motion for summary judgment should be DENIED as MOOT.[1]

## I. BACKGROUND

Plaintiffs are six individuals who purport to represent a class of people who were employed as "leased" or "temporary" office staff ("office staff" or "staff") at Allstate Insurance Company ("Allstate") between 1983 and the present.[2] Plaintiffs allege that Allstate violated two federal acts: (1) § 510 of the Employee Retirement Income Security Act ("ERISA"), 29

1. Plaintiffs' motion for class certification (Dkt.# 32) is also pending in this case. In a March 12, 1999, order, the court determined that Defendant's motions for summary judgment would be ruled upon before a hearing on class certification. Due to the court's conclusion in this memorandum opinion, Plaintiffs' motion for class certification is also DENIED as MOOT.

2. The six named Plaintiffs are or were employed as office staff at various Allstate locations, including Neighborhood Office Agencies ("NOAs") and Exclusive Agencies ("EAs"). NOAs that want to obtain office

U.S.C. § 1140; and (2) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Section 510 of ERISA makes it unlawful for an employer to:

> *discharge,* fine, suspend, expel, discipline, or *discriminate against* a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or *for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.*

29 U.S.C. § 1140 (emphasis added). Section 510 consists of two components: (1) an anti-retaliation component, which prohibits an employer from retaliating against an employee for exercising ERISA rights; and (2) an anti-interference component, which prohibits an employer from interfering with an employee's future rights to benefits. Plaintiffs' Complaint alleges violations of the anti-interference component of § 510.

Specifically, Plaintiffs' Complaint alleges that Allstate violated § 510 by participating in two prohibited acts. First, Plaintiffs allege that in the early 1980s, Allstate "fired and rehired" its office staff in order to force them to obtain their employment through temporary agencies if they wanted to continue working for Allstate. According to Plaintiffs, Allstate's actions constituted a prohibited interference with their ERISA rights under § 510 because Allstate implemented its leased employee structure with the specific intent to exclude its office staff from all medical and pension benefits provided by Allstate. Of the six named Plaintiffs, only one, Esther Stafford ("Stafford") was actually "fired and rehired" during the time Allstate implemented its program. Stafford was originally employed by Allstate in December of 1985. In January of 1987, she was converted to a leased employee status when she was taken off of Allstate's payroll and employed through Olsten of Houston, a staff leasing company. Stafford was informed that she would no longer be eligible for Allstate's benefit programs at that time.

The second prohibited act Plaintiffs allege is that during the relevant time period Allstate fraudulently deceived them into believing they were not Allstate employees and were not entitled to participate in Allstate's benefit plans. According to Plaintiffs, Allstate knew that Plaintiffs were actually regular Allstate employees and that it was Allstate's intention to mislead Plaintiffs into believing otherwise. As to Stafford, Plaintiffs' Complaint suggests that she was mislead into believing she was no longer entitled to Allstate's benefit plans when she was "rehired" though the temporary agency in 1987. The remaining five named Plaintiffs, however, were initially hired through temporary agencies. Linda Berry ("Berry") was hired in 1987, Mary Sutter ("Sutter") and Susan Harrell ("Harrell") were hired in 1991, and Nancy Sellers ("Sellers") and Terri Smith ("Smith") were hired in 1995. Thus, according to Plaintiffs, Berry, Sutter, Harrell, Sellers, and Smith were mislead into believing they were not regular Allstate employees and ineligible for its benefit plans from the first day they were hired as office staff.

The facts are undisputed that Allstate informed Plaintiffs and others through several communications that Plaintiffs were leased employees and ineligible to participate in Allstate's benefit plans. For

---

staff must do so through approved staff leasing companies. EAs work under contract with Allstate as independent contractors.

EAs that want to obtain office staff may hire through staff leasing companies or may hire staff directly as EA's own employees.

example, the facts are undisputed that Allstate requires its office staff to be hired through approved temporary agencies and that the staff receive their paychecks and W–2 forms from the temporary agencies. Both parties concede that Allstate "told [Plaintiffs] when they were hired that they were employees of temporary agencies and not of Allstate." Plts.' Complaint at 8. During their employment, Plaintiffs signed a non-competition agreement which stated that they are employees of their temporary agencies and not of Allstate. Additionally, Allstate has sent memoranda and letters to its agents stating that support staff are not Allstate employees, but are employees of their temporary agencies. The facts are further undisputed that Allstate controls the recruiting, hiring, training, managing, and firing of the office staff and that the staff are provided with Allstate business cards. Plaintiffs contend that except for Allstate's representations that they are leased employees, the facts demonstrate that they are treated in the same manner as regular Allstate employees. Therefore, Plaintiffs argue that Allstate's repeated representations to them and to others that office staff are not regular Allstate employees amounts to a conspiracy to continually violate § 510.

Finally, Plaintiffs' RICO count alleges that Allstate's actions constitute a pattern of racketeering activity because Allstate has continued to implement its scheme to defraud Plaintiffs into believing they are not Allstate employees through the use of mails, wire, radio and television communications.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *See id.* An issue is material only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this analysis, the court reviews the facts and evidence and draws all inferences in the light most favorable to the nonmovant. *See Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). However, the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *See Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

## III. ALLSTATE'S FIRST MOTION FOR SUMMARY JUDGMENT

■ Allstate's first motion for summary judgment argues that Plaintiffs' ERISA and RICO claims are barred by the statute of limitations. ERISA does not specify a limitations period for § 510 claims. When Congress does not provide a statute of limitations, federal courts look to state law for the most analogous limitations period. *See Wilson v. Garcia*, 471

U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778 (5th Cir.1991) (holding that Texas wrongful discharge and employment discrimination claims have the most analogous state statute of limitations for § 510 claims). The parties agree that the applicable statute of limitations for a § 510 action brought in the state of Texas is two years. *See id.* The parties further agree that the applicable statute of limitations for Plaintiffs' civil RICO claim is four years. *See Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Plaintiffs concede that if their ERISA claims are barred by limitations, their RICO claim automatically fails. Plaintiffs filed this lawsuit on July 27, 1998. Therefore, Plaintiffs' ERISA claims are barred if they accrued before July 27, 1996.

A. · Accrual of § 510 Claims

 Federal law governs when a § 510 ERISA cause of action accrues. *See Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988) (holding that even when there is no federal statute of limitations, federal law determines the time at which a cause of action accrues). Under federal law, the general accrual rule is that the limitations period begins to run when a plaintiff knows or has reason to know of the injury and is aware that the injury is due to the defendant's conduct.[3] *See Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995) (§ 1983 claim). The Fifth Circuit has not confronted the specific question of when an ERISA § 510 claim accrues. Allstate cites Seventh Circuit case law to argue that the statute of limitations began to run when Allstate made its decision to hire temporary employees; or in

the alternative, when Plaintiffs were notified that they were ineligible to participate in Allstate's benefits plans. Plaintiffs argue that the statute of limitations did not begin to run until they discovered Allstate's alleged "deception," which they contend did not occur until sometime within the past two years. In the alternative, Plaintiffs argue that the statute of limitations should be tolled under the doctrines of fraudulent concealment, equitable estoppel; or continuing violation. The court will address each of these arguments in turn.

As stated above, Allstate urges this court to adopt the holding of the Seventh Circuit. The Seventh Circuit has stated that a § 510 claim accrues on the date that the employer notifies its employee of its decision to discharge her. *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1140–41 (7th Cir.1992) (holding accrual of plaintiff's § 510 claim occurred when the termination decision was made and communicated to plaintiff). The Fifth Circuit has adopted this view in analogous intentional employment discrimination cases. *See St. Amant v. Benoit*, 806 F.2d 1294, 1298 (5th Cir.1987) (holding § 1983 claim accrued on the date plaintiff was notified that his transfer request was denied); *Chapman v. Homco*, 886 F.2d 756, 758 (5th Cir.1989) (holding Age Discrimination in Employment Act claim "beg[an] to run at the time that the alleged unlawful discriminatory act occurred and the plaintiff was so notified"); *Cervantes v. IMCO, Halliburton Servs.*, 724 F.2d 511, 514 (5th Cir.1984) (holding Title VII and § 1981 claims accrued when the discriminatory decision was made and the plaintiff was informed).

First, Allstate argues that under the *Tolle* rule, Plaintiffs' § 510 claims began to run in 1984 when Allstate made its deci-

---

**3.** "A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir.1995).

sion to hire its office staff through temporary agencies. According to Allstate, a discriminatory intent for its leased employee structure either existed on the date the decision was made or it did not. Therefore, Allstate argues that it was its decision that triggered the accrual of any ERISA action, and because the decision was made over fifteen years ago, Plaintiffs' claims are barred. Allstate's analysis cannot be correct. Not one of the six named Plaintiffs was even working for Allstate as office staff in 1984. Adopting Allstate's argument would lead to the absurd result that the statute of limitations would have begun to run one year before Stafford was hired, three years before Berry was hired, seven years before Sutter and Harrell were hired, and nine years before Sellers and Smith were hired. The statute of limitations cannot begin to run before a plaintiff is injured, and Allstate could not have interfered with Plaintiffs' alleged rights to ERISA benefits before they were even working as office staff.

■ As noted above, *Tolle* states that the statute of limitations for a § 510 claim begins to run when the discriminatory decision is "made and *communicated*" to the plaintiff. *See Tolle,* 977 F.2d at 1141 (emphasis added). Therefore, the proper application of *Tolle* to the instant case leads to the conclusion that the limitations period for Plaintiffs' § 510 claims began to run

when Plaintiffs were informed they would no longer be eligible to participate in Allstate's benefit plans. For Stafford, the date of accrual would be in January of 1987, because it is undisputed that Stafford was "fired and rehired" at that time and that she was informed she would no longer be eligible to participate in Allstate's benefits plans at that time.[4] For the remaining five Plaintiffs, the date of accrual would be at or near the date they were hired because it is undisputed that they were informed from the beginning of their employment that they would not be able to participate in Allstate's benefit plans. Berry, Sutter, Harrell, Sellers, and Smith were all hired through temporary agencies prior to July 27, 1996. Because all six of the named Plaintiffs were notified that they were not able to receive Allstate benefits more than two years before their Complaint was filed, Plaintiffs' § 510 claims are barred if the accrual rule in *Tolle* is applied.

Plaintiffs argue that *Tolle* does not apply to their case because unlike *Tolle,* Plaintiffs are not claiming they were wrongfully discharged.[5] According to Plaintiffs, the employee in *Tolle* became aware of her injury when she was actually terminated. In the instant case, Plaintiffs argue that they were not "aware" of their injury until sometime within the past two years because "Allstate lulled eligible [of-

---

4. The court finds further support for this conclusion in an unpublished opinion from the Southern District of Texas, *Finley v. Kellogg Co.,* No. H–96–0314 (S.D.Tex. Mar. 26, 1998). In that case, Kellogg terminated its secretarial and clerical staff en masse on a Friday afternoon and rehired them through a temporary agency the following Monday. The court held that the plaintiffs' § 510 claims accrued when the outsourcing occurred, because it was at that time plaintiffs were terminated from Kellogg and their benefits were reduced. *See Kellogg,* No. H–96–0314 at 26 (Def.'s Mot. for Summ. J., Ex. 1)

5. Plaintiffs argue this in their Response. It is important to note that in their argument, Plaintiffs do not seek to distinguish Stafford or the other purported members of the class who were discharged ("fired and rehired"). Perhaps realizing that the claims of such employees are barred, Plaintiffs' Response solely focuses on their second alleged prohibited act under § 510—hiring office staff through temporary agencies with the intent to interfere with their ERISA rights by misleading them into thinking they were not regular Allstate employees.

fice staff]—through a web of lies—into believing they were not regular Allstate employees." Plts.' Response at 16, 18. According to Plaintiffs, because "[P]laintiffs believed Allstate's lies . . . [t]hey had no idea they were entitled to benefits, because they had no idea they were being tricked." *Id.* at 15. Therefore, Plaintiffs urge this court to fashion an equitable ruling by holding that the limitations period did not begin to run on Plaintiffs' claims until they learned of the alleged fraud behind Allstate's decision.[6]

■ The court disagrees with Plaintiffs' analysis. First, the law is well settled that in order for a claim to accrue, "[a] plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim." *Piotrowski*, 51 F.3d at 516. Here, Plaintiffs knew from the day they were hired that they were not entitled to Allstate's benefit plans. Further, Plaintiffs knew that Allstate was the one denying them eligibility for its benefit plans based on their leased employee status. The fact that Plaintiffs did not realize their alleged injuries were potentially actionable does not affect the date of accrual. *See Chapman*, 886 F.2d at 758 (holding the statute of limitations on plaintiff's employment discrimination claim accrued on the date of discharge, not on the date plaintiff discovered defendant's illicit motives). Plaintiffs' allegations that Allstate fraudulently concealed information from them goes to equitable tolling, not accrual. *See Christopher v. Mobil Oil Corp.*, 149 F.R.D. 549, 551 (E.D.Tex.1993) (fraudulent concealment in ERISA § 510

claim would toll the two year statute of limitations); *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir.1994) (rejecting plaintiff's argument that his § 510 allegations accrued when he first discovered the employer's fraud behind the decision because fraudulent concealment is a tolling issue); *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1267 (8th Cir.1990) (holding that plaintiff's § 510 claim accrued when plaintiff was terminated, not when he learned of fraud behind his termination).

This court holds that relevant Fifth Circuit jurisprudence in the intentional employment discrimination context—that a plaintiff's claim begins to run when the plaintiff is notified of the employer's decision to discharge her—is sufficiently analogous to a § 510 claim alleging discrimination on the basis of interference with a plaintiff's alleged ERISA rights. Therefore, the court finds that Plaintiffs' § 510 claims are governed by *Tolle* and that Plaintiffs' claims accrued upon notification that they were ineligible to participate in Allstate's benefit plans. As a result, the court finds that Allstate has met its initial burden of demonstrating that Plaintiffs did not file their lawsuit until after the limitations period had expired. The burden now shifts to Plaintiffs to demonstrate that the limitations period should be tolled. *See Christopher*, 149 F.R.D. at 552.

**B. Tolling—Fraudulent Concealment**

■ Fraudulent concealment tolls the statute of limitations when a defendant knowingly conceals facts from a plaintiff that are necessary to support a claim.[7]

---

6. The parties sharply debate whether Plaintiffs' alleged injuries even fall within the ambit of § 510. Allstate maintains that Plaintiffs cannot state a cause of action under § 510, arguing that ERISA allows an employer to exclude certain categories of employees, such as leased employees, from benefit plans. For purposes of a statute of limitations analysis only, the court will assume that Plaintiffs' claims are viable.

7. When a state statute of limitations is borrowed, the state's tolling rules are borrowed as well. *See Hickey v. Irving Indep. School Dist.*, 976 F.2d 980, 984 n. 8 (5th Cir.1992).

*See L.C.L. Theatres v. Columbia Pictures Indus.,* 566 F.2d 494, 496 (5th Cir.1978). The doctrine of fraudulent concealment focuses on whether the plaintiff has exercised due diligence in seeking to learn the facts which would disclose the fraud. *See id; Christopher,* 149 F.R.D. at 551; *Humphrey v. J.B. Land Co.,* 478 F.Supp. 770, 772 (S.D.Tex.1979) (Under the doctrine of fraudulent concealment, "[t]he pertinent inquiry is whether the plaintiff knew or by the exercise of due diligence could have known that he might have a cause of action."). Plaintiffs cite *Christopher* for the proposition that whether or not a plaintiff has exercised the degree of diligence necessary to toll the statute of limitations is a question of fact. While this may be true, a complaint alleging fraudulent concealment is not enough to create a fact issue. Plaintiffs must come forth with specific evidence that Allstate acted with the intent to mislead Plaintiffs into thinking they were not entitled to benefits when they really were so entitled. *See Christopher,* 149 F.R.D. at 552 ("[I]n order to defeat defendant's motion for summary judgment, plaintiffs must provide the court with specific facts which they believe demonstrate the alleged fraud perpetrated by the defendants."). Therefore, under the facts of this case, Plaintiffs would have to produce evidence that: (1) Allstate knew Plaintiffs were not leased employees but told Plaintiffs otherwise; and (2) Allstate's concealment was successful, meaning Plaintiffs did not realize they were Allstate employees until within two years of filing their suit. Plaintiffs have not successfully carried their burden on either point.

In *Christopher,* the plaintiffs brought a § 510 action alleging that their employer fraudulently concealed a waiver provision in a retirement plan. The court held that a genuine issue of material fact existed as to whether the plaintiffs had exercised diligence in discovering the fraud when the facts showed that the plaintiffs did not know that one of the retirement options was concealed from them until new information was discovered in a similar trial. *See id.* at 551. Here, Plaintiffs make the conclusory assertion that they did not become aware of the alleged fraudulent scheme "until within two years of the filing of the Complaint," but they do not specify when or how they learned of the alleged fraud. Plts.' Response at 18. Unlike *Christopher,* they do not point to any evidence that unveils fraud. The only evidence Plaintiffs point to are oral and written statements by Allstate informing them and others that Plaintiffs are considered leased employees. Such evidence does not establish that Allstate secretly believed that Plaintiffs were regular employees of Allstate but told Plaintiffs otherwise. Rather, Plaintiffs' evidence supports Allstate's assertion that Plaintiffs were not regular Allstate employees. It is undisputed that Allstate has never concealed the fact that leased employees are not entitled to participate in Allstate's pension and medical plans.

Further, there is no proof submitted by Plaintiffs showing that they have discovered any facts in the past two years that they did not already know prior to July 27, 1996. Allstate's decision to hire office staff through temporary agencies was announced in the early 1980s. All Plaintiffs were informed prior to July 27, 1996, that they were employees of the temporary agencies and not of Allstate and, as a result, they were excluded from Allstate's benefit plans. Plaintiffs received their paychecks and W–2 forms from the temporary agencies and signed non-competition agreements stating that they were employees of their respective temporary agencies and not of Allstate. Despite those facts, each Plaintiff avers that "[a]t all times while working for Allstate, I considered

myself an employee of Allstate." Plts.' Response, Ex. 1(a)-(f). By Plaintiffs' own admission, therefore, they have always considered themselves employees of Allstate, not just within the past two years. Plaintiffs' claim, if viable, lay in plain sight for each of them to see from the beginning of their employment (or, for Stafford, when she was rehired through Olsten). Because there is no evidence suggesting fraud delayed Plaintiffs' discovery of their § 510 claims, the court holds that Plaintiffs have not sufficiently carried their burden of proving that fraudulent concealment tolls their claims.

## C. Equitable Estoppel

■ Plaintiffs next argue that the doctrine of equitable estoppel tolls the limitations period for their § 510 claims. The Fifth Circuit explained the distinction between equitable tolling and equitable estoppel in *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir.1991). " 'Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act. Equitable estoppel, in contrast, examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights.' " *Rhodes,* 927 F.2d at 878 (citation omitted). Thus, estoppel applies when the defendant takes affirmative steps to conceal " 'facts necessary to support a discrimination charge.' " *See id.* at 878–79 (citation omitted). In the instant case, because Plaintiffs' equitable tolling argument was based on fraudulent concealment, the analysis under equitable estoppel is similar.

■ For the same reasons Plaintiffs could not prove equitable tolling, Plaintiffs cannot carry their burden of showing that Allstate should be estopped from asserting the statute of limitations as a defense. Plaintiffs' Response states that the doctrine of equitable estoppel is applicable

because "[P]laintiffs relied on Allstate's false representations, not knowing that Allstate was perpetrating a fraud to deny them their pension and medical benefits." Plts.' Response at 19. Again, Plaintiffs knew from the moment they were hired through their respective temporary agencies that they were not entitled to benefits because of their leased employee status. *See Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1216 (5th Cir.1992) ("[E]quitable estoppel is not warranted where an employee is aware of all the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose."). Whether Allstate's actions of excluding leased employees from ERISA benefits violates § 510 may be a valid question, but that fact alone does not trigger equitable estoppel. Allstate has always maintained that it intended to exclude leased employees from its plans. Plaintiffs have not set forth any evidence showing a different intent.

## D. Continuing Violation

Finally, Plaintiffs argue that the statute of limitations should be tolled under the continuing violation theory. The Fifth Circuit has not addressed whether a "continuing violation" is a valid equitable exception to the limitations period in § 510 claims. In similar employment discrimination claims, a continuing violation arises when the unlawful employment discrimination manifests itself over time rather than as a single discriminatory act. *See Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733–34 (5th Cir.1983). The Fifth Circuit has noted that the " '[c]ase law on the subject of continuing violations [is] inconsistent and confusing.' " *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1560 (5th Cir.1985) (citations omitted). "The core idea, however, is that '[e]quitable considerations may very well require that the filing periods not begin to run until facts sup-

portive of [an employment discrimination] action are or should be apparent to a reasonably prudent person similarly situated.'" *Id.* (citation omitted). " 'The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.'" *Id.* at 1561 (citation omitted).

▉ Plaintiffs argue that Allstate's actions constituted a "continuing violation" of § 510 because Allstate allegedly "conspired to and did discriminate against [P]laintiffs" by repeatedly misleading Plaintiffs into believing that they were ineligible for Allstate's benefit plans. The court finds that in the instant case, Allstate's refusal to allow Plaintiffs to participate in its benefit plans was the single act that served as the basis for the alleged wrongful discrimination. *See Russell v. Bd. of Trs. of Firemen,* 968 F.2d 489, 493 (5th Cir.1992) (holding continuing violation exception did not apply when widow's benefits were terminated because widow was fully aware she would lose her benefits upon remarriage); *Frazier v. Garrison I.S.D.,* 980 F.2d 1514, 1521–22 (5th Cir. 1993) (holding continuing violation exception did not apply when teachers did not set forth facts indicating the alleged racial discrimination was hidden or not apparent when they were discharged). Here, Plaintiffs were fully aware they were not receiving benefits. There are simply no facts which indicate that the alleged discrimination was not apparent when they were notified that they were ineligible to participate in Allstate's benefit plans.

Further, although neither party was able to cite controlling Fifth Circuit law on the issue, Allstate cites an unpublished opinion from the Southern District of Texas which held that the continuing violation doctrine did not apply to the plaintiffs' § 510 claims. In *Finley v. Kellogg Co.,* No. H–96–0314 (S.D.Tex. Mar. 26, 1998), Kellogg terminated its secretarial and cler-

ical staff en masse on a Friday afternoon and rehired them through a temporary agency the following Monday. The plaintiffs alleged that the outsourcing constituted a conspiracy to violate § 510 by arguing that the conspiracy was not complete until the outsourcing was complete. The court rejected the plaintiffs' argument on the basis that "actionable injury from a civil conspiracy results from the overt actions of the defendants and not the continuation of the conspiracy." *Kellogg,* No. H–96–0314 at 26. According to the court, the original discriminatory act of excluding the plaintiffs from ERISA benefits had the degree of permanence that should have triggered the claimants' awareness of and duty to assert their rights. *See id.* This court finds the same reasoning applicable to the case at bar. As a result, the continuing violation exception does not toll Plaintiffs' claims.

## IV. CONCLUSION

After reviewing the parties' written submissions, the court concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are no disputed issues of material fact regarding whether Plaintiffs' claims are time-barred. Therefore, Defendant's first motion for summary judgment is hereby GRANTED. Defendant's second motion for summary judgment is hereby DENIED as MOOT. It is so ORDERED.